## ACACIA PARK CEMETERY ASS'N, Inc., v. COMMISSIONER OF INTERNAL REVENUE.

No. 4996.

Circuit Court of Appeals, Seventh Circuit.

Nov. 17, 1933.

Rehearing Denied Jan. 11, 1934.

Pat Malloy, Asst. Atty. Gen., and Sewall Key and Francis H. Horan, Sp. Assts. to Atty. Gen. (E. Barrett Prettyman, General Counsel, Bureau of Internal Revenue, of Washington, D. C., of counsel), for respondent.

Leonard L. Cowan, of Chicago, Ill., for petitioner.

Before ALSCHULER, SPARKS, and FITZHENRY, Circuit Judges.

SPARKS, Circuit Judge.

There was substantial evidence to support the following facts found by the Board. Petitioner, an Illinois corporation, in 1922, constructed a cemetery, the first section of which, 25½ acres, was divided into 5,896 four-grave lots. These lots were sold by the petitioner under contracts which provided that "the purchase price hereof shall include perpetual care." Salesmen were instructed to represent to purchasers that a fund of $100,000 was to be established, and that ten per cent of all sales would be placed in that fund, and that the income of the fund would be used for perpetual care of the lots of said section, and such representations were made to prospective purchasers. The amount of $100,000 was arrived at by considering the total sales of the lots in the first section to be $975,000, and that ten per cent thereof would be approximately $100,000.

The second division was developed in 1924, consisting of 46 acres, divided into 9,564 four-grave lots. The officers of the petitioner contemplated setting up a perpetual care fund of approximately $100,000 for the care of this section of the cemetery, and salesmen represented to prospective purchasers that ten per cent of the sales price would be placed in such fund. Certain literature given to prospective purchasers contained similar rep-

resentations, including one that "this fund is now rapidly accumulating." It was represented in a circular that all property in the cemetery was under perpetual care, and that "from each sale of property, a percentage is set aside in the perpetual care fund. Only the income from this fund can be used, and this income is entirely administered for upkeep."

On February 1, 1924, petitioner entered into an agreement with the Citizens' State Bank of Chicago whereby it deposited $2,500 and agreed to make further deposits from time to time, so that within a year the fund would amount to at least $52,000. This agreement provided that petitioner must remain the absolute owner of the funds, subject, however, to the trust thereby created, and that the income only of the fund was to be devoted "so far as may be necessary to the care and maintenance of said cemetery, and the remainder of such income to such other purposes as may be, from time to time, determined upon by said Company." The fund was to remain in existence as long as the cemetery should remain such.

Payments aggregating $6,500 were deposited with the Citizens' State Bank in accordance with the terms of the agreement in 1924. The accumulated interest on the fund was never withdrawn by petitioner.

On March 26, 1926, a new agreement was executed with the Lake View State Bank, similar to the agreement executed in 1924. This provided that the petitioner would create a fund for the perpetual care of the cemetery, and that it would deposit in that fund within one year from March 1, 1926, the sum of $100,000. The agreement further provided, like the other trust agreement, that the fund would remain with the depositary as long as the Acacia Park Cemetery remained a place of burial. The income was to be withdrawn by the petitioner in the same manner and under the same circumstances as in the case of the first fund. The $6,500, plus accumulated interest then on deposit under the first agreement, was transferred from the first bank to the second bank to be held under the terms of the second agreement. Petitioner added to the account of the principal in 1929 the sum of $1,000. The total standing to the credit of the fund in January 1, 1932, was $10,317.66.

Amounts paid in by purchasers of lots were not deposited to the credit of the perpetual care fund, except as above stated, because the petitioner required the moneys for construction. At the time construction and sale of lots was begun, approximately 725 lots were set aside, the intention being that the entire receipts from those lots would be placed in the perpetual care fund. Such lots were still intact and their retail value was approximately $400,000.

Sales of the lots in the taxable years were as follows:

| Year | First section | | Second section |
|---|---|---|---|
| 1922 | $150,035.00 | | $ ———— |
| 1923 | 455,113.50 | | ———— |
| 1924 | 235,365.00 | | 211,585. |
| 1925 | 53,435.00 | | 403,245. |

In computing the profits on the sale of the lots in each of the two sections for its income tax returns the petitioner added to the cost of the lots $100,000 on account of the perpetual care fund. The Commissioner found deficiencies against the petitioner based on the exclusion of this $100,000.

The Board of Tax Appeals held (1) that $100,000 could not be added to the cost basis of each division for the purpose of computing gain on the sale of lots therein, and (2) that the petitioner had not established that a portion of the money received from the sale of lots was a trust fund and therefore not income to the petitioner.

The statutes and Treasury Department Regulations involved in this proceeding are as follows: Sections 213 (a), 232, 233 (a), and 234 (a) (1) of the Revenue Act of November 23, 1921, c. 136, 42 Stat. 227, and the same numbered sections of the Act of June 2, 1924, c. 234, 43 Stat. 253, 26 USCA §§ 954 (a), 984, 985 (a), 986 (a) (1), which contain provisions which are identical with the corresponding sections of the act of 1921 [1];

[1] "Sec. 213. That for the purposes of this title * * * the term 'gross income'—

"(a) Includes gains, profits, and income derived from * * * the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever. The amount of all such items * * * shall be included in the gross income for the taxable year in which received by the taxpayer. * * *

"Sec. 232. That in the case of a corporation subject to the tax imposed by section 230 the term 'net income' means the gross income as defined in section 233 less the deductions allowed by section 234, and the net income shall be computed on the same basis as is provided in subdivision (b) of section 212 or in section 226. * * *

"Sec. 233. (a) That in the case of a corporation subject to the tax imposed by section 230 the term 'gross income' means the gross income as defined in sections 213 and 217. * * *

"Sec. 234. (a) That in computing the net income of a corporation subject to the tax imposed by section 230 there shall be allowed as deductions: (1) All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. * * *"

Treasury Department Regulations 62 [2], promulgated under the Revenue Act of 1921, and 65 [3], promulgated under the Revenue Act of 1924.

■ It is the contention of petitioner that (1) the sum of $100,000 for each section of its cemetery was properly included in determining the cost of its lots, for liability for perpetual care in accordance with the representations made to purchasers at the time of sale; or (2) ten per cent of the sales price was received in trust for the purpose of being placed in the perpetual care fund and therefore should have been deducted from the gross receipts from the sales of lots.

We think there is no merit in petitioner's first contention, which is based on the theory that ordinary expense of grave maintenance to be made in future years can be added as cost of the land. We concur in the Board's statement that cost, used as a basis for determining gain from the sale of land is ordinarily made up of two items: (1) the amount paid for the land, plus (2) the outlay for any improvements thereon. There is nothing in the findings of fact nor in the evidence which would exempt this transaction from the ordinary classification. The ten per cent fund, as stated in petitioner's advertisements, was not to be touched for the general care and upkeep of the driveways, pathways, structures, or such portions of the cemetery as were not used for burial purposes, nor for the cost of operating the sprinkling system, nor for making improvements, but the cost of those things was to be paid out of petitioner's general income for all purposes. It is obvious that there was no obligation resting upon petitioner to do any of those things beyond the extent of the general income, not including the ten per cent fund, hence the cost of improvements and care, other than grave maintenance, might never be incurred, and for that reason if no other, the cost could not be approximated, and of course can not be included in cost of the land to petitioner. Likewise the cost of maintaining the graves could not be reasonably approximated to be $100,000 and the cost of the land to petitioner be increased by that amount, because the unsold lots might never be sold. We are convinced, therefore,

that capitalization of the probable expense of maintaining the graves can not be said to constitute a part of the cost of the land.

■ It is not denied that petitioner's obligation to perpetually maintain the graves of the several purchasers arose on the respective dates of the purchases, and that petitioner was entitled to claim credit against its income for its expenditures in maintaining the graves when and as the expenditures were actually made, or when petitioner's liability therefor definitely accrued. Since petitioner kept its books of account upon the accrual basis, it was entitled to a credit against its income for all liability in respect to the maintenance of graves, which had accrued during the years in question. Just what part of such liability, if any, should be considered as accrued, constitutes the basis of petitioner's second contention.

■ In the proceeding now before us, we are not concerned with the enforcement of the lot owners' rights, but the question with which we are confronted deals only with the relationship between petitioner and the taxing authorities of the government. So far as this record discloses, not a lot in this cemetery is owned by an officer or stockholder of petitioner. The equities of the beneficiaries of the trust are therefore not involved. The law permitted petitioner to keep its books on the accrual basis, which as it well states, implies that the books shall immediately reflect obligations and expenses definitely incurred and income definitely earned; and we think it further implies that the actions of the taxpayer shall be consistent with its books of account.

■ The rulings of the Board are consistent in permitting deductions for accrued liabilities where the books of account are kept according to the accrual method, and that permission has never been denied, in cases of trusts such as the one before us, where the money received has actually been paid into the trust fund. The Board's ruling in such cases requires the actual payment of the money into the trust fund as a prerequisite to its deduction as an accrued liability, and we think that ruling is proper. See Portland Cremation Ass'n v. Comm. (C. C. A.) 31 F.(2d) 843; American Cemetery Co. v. United States (D. C.) 28 F.(2d) 918; Troost Ave. Cemetery Co. v. United States (D. C.) 21 F.(2d) 194; Appeal of Los Angeles Cemetery Association, 2 B. T. A. 495; Metairie Cemetery Association v. Comm., 4 B. T. A. 903; Appeal of Springdale Cemetery Association, 3 B. T. A. 223; Appeal of Evergreen Ceme-

[2] Treasury Regulations 62. Art. 1561. "* * * For the purpose of ascertaining the gain or loss from the sale or exchange of property, the basis is the cost of such property, or in the case of property which should be included in the inventory, its latest inventory value. * * *"
[3] Treasury Regulations 65. Art. 1591. "* * * The basis for determining the gain or loss from the sale or other disposition of property acquired after February 28, 1913, is, in general, the cost of such property. * * *"

tery Association, 21 B. T. A. 1194; Inglewood Park Cemetery Association v. Comm., 6 B. T. A. 386. In permitting a use of the accrual method the Board is not required to permit a deduction of any item which is not truthfully reflected upon the books of petitioner except in case of an excusable error. Petitioner's claims before the Board show a charge of $200,000 as a care fund for both sections of the cemetery, but manifestly this was not an accrued item of indebtedness for reasons hereinbefore stated, and if it were charged on petitioner's books as such, that fact is not disclosed by the record. There was nothing on the books of account to indicate that ten per cent, or any other part of the purchase price of the lots sold was set aside or intended to be set aside as a trust fund for grave maintenance, except $7500 and the accrued interest thereon, which was deposited in the bank as a trust fund, not for grave maintenance particularly, but for general upkeep of the cemetery. These facts we think illustrate the wisdom of the Board's ruling that the money should be paid into the trust fund and the books of account should disclose that fact, before those amounts may be considered as accrued liability for the purposes of this act. This does not mean that an enforcible trust was not created in favor of each purchaser at the time he paid his money to petitioner, but it does mean that a taxpayer who claims the benefit of the taxing statute with respect to trust funds held as accrued liabilities must truthfully disclose in his books of account that he is himself so treating those funds, and it is not a sufficient answer for petitioner to say that while it has ignored the trust by not establishing the trust fund, and has used the funds for other corporate purposes, yet it still acknowledges its ultimate trust liability if and when a lot owner chooses to enforce it. The lot owners may never choose to enforce it, and if the present methods of petitioner are pursued in the future it may never be financially able to make the expenditures for which it now asks credit. The government has rights in this matter aside from those of the lot owners and petitioner's stockholders, and it is not unreasonable that it should have some assurance of petitioner's intention of carrying out the trust before permitting the deduction of the entire amount as accrued liabilities.

Moreover, petitioner has treated the entire amount herein involved as income by using it for purposes not contemplated by the trust, which it agreed with its lot purchasers that it would not do, and by failing to establish the fund which it agreed to establish, and it therefore is not in a position to ask this court to aid it for the purpose of avoiding taxation by considering the thing done which it has itself continuously failed to do.

The decision of the Board is affirmed.