## MASON SECURITIES ASS'N v. HELVERING, Com'r of Internal Revenue. *

### No. 11309.

Circuit Court of Appeals, Eighth Circuit.

March 14, 1939.

*Rehearing denied April 8, 1939.

William M. Fitch, of St. Louis, Mo., for petitioner.

Louise Foster, Sp. Asst. to Atty. Gen. (James W. Morris, Asst. Atty. Gen., and Sewall Key and Norman D. Keller, Sp. Assts. to Atty. Gen., on the brief), for respondent.

Before STONE, WOODROUGH, and THOMAS, Circuit Judges.

THOMAS, Circuit Judge.

Petition for review of decision of the United States Board of Tax Appeals. 36 B. T. A. 958. The case involves a deficiency in income tax for the year 1931 in the amount of $604.45. The order of redetermination entered by the Board confirmed the deficiency found by the Commissioner.

The essential facts found by the Board and shown by the evidence are as follows:

The petitioner, Mason Securities Association, is a common law business trust organized in the State of Missouri in 1925. It acquired and held title to a tract of approximately 72 acres of land in St. Louis County, Missouri, which it improved and subdivided for the purpose of selling cemetery lots. Its plan involved the sale of the lots on contracts calling for the payment of the purchase price in installments and the creation of a perpetual care fund under separate control for the support and maintenance of the cemetery. To this end the Hiram Cemetery Association was incorporated under a pro forma decree of the Circuit Court of St. Louis County, Missouri, in March, 1925.

On May 4, 1925, the petitioner and the Hiram Cemetery Association entered into an Agreement in writing which was duly recorded in the office of the Recorder of Deeds in St. Louis County. The purpose of the Agreement was to provide for the perpetual care fund and the maintenance of the cemetery. To accomplish this purpose petitioner agreed to convey to the cemetery association every tenth lot in the cemetery as fast as the cemetery was platted and developed and "to give ten per cent of all money received from the sale of all remaining lots in any section and to that end to render semi-annually a full and complete statement of all lots sold and pay to the party of the second part (Hiram Cemetery Association) said percentage of the amount so received within ten days from the date of said statement." In consideration of these payments the cemetery association agreed to assume the care and maintenance of the sections of the cemetery when they were fully developed. It was further provided that all monies received by the cemetery association should be invested in safe securities enumerated in the contract and that the income from the investment only should be used to meet the expenses in caring for and maintaining the cemetery. The petitioner was to have full control over the development of the cemetery and the corporation over the perpetual care fund.

In the sale of its lots the petitioner used a uniform sales contract headed, "Purchase Contract, Hiram Cemetery, Perpetual Charter-Perpetual Care." The contract provided in part: "This contract is subject to the rules and regulations of Hiram Cemetery Association, and to the conditions and stipulations contained in a certain deed recorded in the office of the Recorder of Deeds of St. Louis County, Missouri."

The deed to the cemetery lots recites that the lot is sold "subject to the terms, conditions and limitations contained in an agreement recorded in the office of the Recorder of Deeds of the County of St. Louis, State of Missouri; which agreement contains conditions, restrictions and limitations governing Hiram Cemetery and provides for perpetual care thereof."

Petitioner rendered to the Hiram Cemetery Association semi-annual statements of lots sold as provided in its agreement. Such statements for the year 1931 were rendered July 7, 1931, and January 6, 1932. The statements were identical except as to amounts reported. The statement of July 7, 1931, is as follows:

"July 7, 1931.
"Hiram Cemetery Association,
  "Clayton, Missouri.
"Gentlemen:
  "Agreeable to the contract between your association and the Mason Securities Association, we hand you herewith statement of gross amount of installment and contract sales of lots in Hiram Cemetery sold by us for the six months period ended June 30, 1931, which is as follows:

Gross amount of installment and
  contract sales ................$28,453.00
Less sales cancelled during period ...................... 1,750.00

Net sales ..................... 26,703.00

  "Ten per cent of the above amount, as and when collected, will be payable to you in cash.

  By reason of the fact that your income from these trust funds will not maintain the improvements, and agreeable to our understanding, you may charge the sum of $2,670.30 against us subject to being paid in cash and we will use the balance due you and such additional sums as may be necessary to enable us to maintain, improve, and develop the Cemetery grounds along the general plans heretofore outlined without further cost to you until your trust fund will care for same.
      "Respectfully,
          Mason Securities Association,
      "(Signed)  . Hugo Essen, President."

The amounts received by petitioner from the sale of lots was at no time paid over to the cemetery association in accordance with the provisions of the Agreement of May 4, 1925. Instead the parties entered into an informal oral agreement by the terms of which petitioner retained the monies intended by the Agreement to be given to the cemetery association for a perpetual care fund, and used the monies in its business; and the cemetery association, instead of receiving the monies and investing them in the classes of securities provided for in the Agreement, left them with petitioner. In other words, under the oral agreement the Hiram Cemetery Association abdicated all its duties and functions under the Agreement. Hugo Essen, President of petitioner, testified: "It was then agreed between Mason Securities Association and the trus-

tees of Hiram Cemetery Association that Mason Securities Association may retain the 10% fund due to Hiram Cemetery Association, and use that fund, and for the use of same, Mason Securities Association would maintain the cemetery lots which had been sold and fully paid for."

It was further agreed that petitioner would not pay dividends on its shares and that it would maintain accounts receivable at all times in at least twice the amount of the fund. This agreement was at all times kept, the witness testified.

In the year 1931 petitioner collected installments due upon contracts entered into from 1926 to 1931 inclusive in the sum of $44,498.47, ten per cent of which, or $4,449.85 was charged to a reserve fund set up on its books for the Hiram Cemetery Association. At the beginning of 1931 this reserve fund amounted to $39,661.07 and at the end of that year to $44,306.37.

Petitioner reported its income tax return on the installment sales basis and for the year 1931 eliminated from taxable income the amount of $4,449.85 representing the amount entered in the reserve fund for that year. Contrary to the terms of the Agreement and, therefore, having no relevancy to the question for determination, petitioner claims this sum consists of two parts: $1,733.20, being ten per cent of collections on contracts fully paid during the year, and $2,716.65, being ten per cent of collections on contracts not fully matured prior to the end of the year. The first item, it is argued, is a debt and the second a contingent liability. There is no provision justifying such a division in either the written Agreement of May 4, 1925, or the oral contract under which the business was operated. The Commissioner restored the entire $4,449.85 to the taxable income and the Board approved.

The petitioner insists that it is entitled to deduct this amount from its gross income for the year as a business expense under section 23(a) of the Revenue Act of 1928, c. 852, 45 Stat. 791, 799, 26 U.S.C.A. § 23(a). Section 23 of the Act provides:

"In computing net income there shall be allowed as deductions:

"(a) Expenses. All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, * * *."

Section 43, 26 U.S.C.A. § 43, provides: "The deductions and credits provided for in this title [chapter] shall be taken for the taxable year in which 'paid or accrued' or 'paid or incurred', dependent upon the method of accounting upon the basis of which the net income is computed, * * *."

The Board denied relief on the ground that the amount in controversy is not shown to be the actual expense of maintenance and care of the cemetery, and the record does not disclose what the actual expense was for the taxable year.

Had the petitioner and the Hiram Cemetery Association handled the ten per cent fund in accordance with the provisions of the Agreement of May 4, 1925, the amount in controversy would undoubtedly have been a proper deduction. This would have been true had the payments been required to be made at some fixed date later than the ten day period after the semi-annual statement was rendered. United States v. Anderson, 269 U.S. 422, 46 S.Ct. 131, 70 L.Ed. 347; American National Co. v. United States, 274 U.S. 99, 47 S.Ct. 520, 71 L. Ed. 946. But the business was not so carried on. The written Agreement was superseded by an oral agreement; and under that agreement the ten per cent fund was never set aside. It was retained, mingled with its general funds and used by petitioner for its general purposes. It was not placed in a separate trust fund. Petitioner merely made a book entry showing the amount which should have been paid or set apart but never was. The oral agreement fixed no due date nor time within which payments must be made. Such payments may never be made. They had not been made at the time of the hearing before the Board in 1937, and they are not secured by any lien on property of any class. Under the oral contract petitioner was under no restriction, contractual or otherwise, as to the disposition, use or enjoyment of the fund. Brown v. Helvering, Commissioner, 291 U.S. 193, 199, 54 S.Ct. 356, 78 L.Ed. 725. For that reason it was not entitled to a deduction. In Acacia Park Cemetery Ass'n v. Commissioner of Internal Revenue, 7 Cir., 67 F.2d 700, 703, 704, the court sustained the ruling of the Board requiring the actual payment of the money into a trust fund as a prerequisite to its deduction as an accrued liability. We agree with that decision. In the last cited case it is said: "Moreover, petitioner has treated the entire amount herein involved as income by using it for purposes not contemplated by the trust which it

agreed with its lot purchasers that it would not do, and by failing to establish the fund which it agreed to establish, and it therefore is not in a position to ask this court to aid it for the purpose of avoiding taxation by considering the thing done which it has itself continuously failed to do."

This language is peculiarly applicable to the conduct of the petitioner in this case.

Affirmed.