**GRACELAWN MEMORIAL PARK, Inc.,**
**Plaintiff,**

v.

**UNITED STATES of America,**
**Defendant.**

**Civ. A. No. 1866.**

United States District Court
D. Delaware.

Dec. 2, 1957.

James R. Morford (of Morford & Bennethum), Wilmington, Del., for plaintiff.

Leonard G. Hagner, U. S. Atty., Wilmington, Del., for defendant.

LAYTON, District Judge.

In this proceeding, taxpayer, Gracelawn Memorial Park, Inc., sues to recover 1952, 1953 and 1954 income taxes which the Commissioner of Internal Revenue assessed and collected. The question presented is whether 15 per cent of the sales price of cemetery lots received by the taxpayer and set aside .in a building trust fund constituted income. The answer requires an interpretation of Section 22 of the Internal Revenue Code of 1939 (26 U.S.C.1952 ed. § 22).[1]

The taxpayer is a corporation organized for profit, engaged in the business

---

1. "(a) [as amended by Secs. 1 and 3, Public Salary Tax Act of 1939, c. 59, 53 Stat. 574] *General definition.*—'Gross Income' includes gains, profits, and income derived from salaries, wages, or compensation for personal service (including personal service as an officer or employee of a State, or any political subdivision thereof, or any agency or instrumentality of any one or more of the foregoing), of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever. In the case .of Presidents of the United States and judges of courts of the United States taking office after June 6, 1932, the compensation received as such shall be included in gross income; and all Acts fixing the compensation of such Presidents and judges are hereby amended accordingly. In the case of judges of courts of the United States who took office on or before June 6, 1932, the compensation received as such shall be included in gross income."

of operating a cemetery. It sells cemetery lots in accordance with a form of contract which, among other things, requires that payments by purchasers of lots shall be divided between two trust funds, a "Trust Fund for care" and "Building Trust Fund". We are not concerned with the first trust but with the second, the preamble to which states:

"Whereas, it is desired that a suitable building or buildings be built for the use of lot owners, and their families as a chapel, administrative building and for such other purposes as are consistent with the operation of a cemetery, * * *".

The trust instrument may be briefly summarized as follows:

(1) The trust fund provides (pp. 1–2) that at least 15 per cent of the purchase price of each lot shall be placed into the trust. This amount shall be deposited with the trustees and although a higher amount may be deposited pursuant to an agreement with the lot purchasers, the 15 per cent of the purchase price is a minimum below which the deposit may not go. (Par. 1.)

(2) The trust provides that the deposit in the trust may be taken from the final payment made by purchasers of the lot and that the cemetery association (the taxpayer) may contribute moneys or securities to the trust fund and may advance moneys from time to time to the trust fund in anticipation of the deposits required to be made out of collections to be received. There are no duties placed on the trustees to see to the collection or disposition of the moneys collected pursuant to the sales agreement or to take any action in the event such moneys are not deposited into the trust. (Par. 2.)

(3) Subject to the approval of the taxpayer the trustees are directed to invest the principal of the trust fund, with the income from these investments being added to the principal of the trust. (Par. 3.)

(4) After deposits, gifts, and accumulations of income aggregate at least $75,000, the trustees are directed to use these funds for the acquisition of a suitable site or sites, the erection of a building or buildings on the land so acquired or the furnishing of the same. The plans, specifications and payments for work and material for the building or buildings are subject to the approval of the taxpayer. After the buildings have been completed and approved by the taxpayer, the trust provides that title thereto "for the benefit of the lot owners and the Cemetery Association" shall remain with the trustees for 50 years after which time title to the ground and buildings pass in trust to the taxpayer. (Par. 4.)

(5) The taxpayer agrees to maintain and operate the buildings after they have been constructed, but all charges made for any purpose shall be paid to the taxpayer. (Par. 5.)

(6) It is provided that, if sufficient funds are not received within 20 years to enable the erection and furnishing of such buildings, the money so collected shall be returned to the lot purchasers making such deposits or to their personal representatives or heirs. (Par. 6.)

(7) If the building or buildings contain rooms, vaults, crypts, columbariums or other spaces sold or leased, any sales proceeds or rentals shall be placed in the trust fund until the buildings are completed, except for 10 per cent of the sums received which shall be placed in the trust for care. After the buildings have been completed, ninety per cent of the sums so received shall be paid to the taxpayer and ten per cent shall be placed in the trust for care. (Par. 7.)

(8) The trust provides that construction loans may be secured and that the taxpayer may guarantee the payment thereof. If the building or buildings are encumbered by a mortgage, the net income from the buildings so erected shall be used to repay the mortgage, and after repayment has been made, the net income shall be paid to the taxpayer. (Par. 8.)

(9) The taxpayer agrees to keep such buildings in repair and insured. (Par. 9.)

(10) Paragraph 10 of the trust provides that the trustees shall not pay any of the trust funds to the cemetery association and that any funds remaining after the erection of the buildings shall be placed in the trust fund for care.

(11) Paragraph 11 provides that the trustees are entitled to reasonable compensation for their services and that the trustees shall have a lien upon the trust funds for this purpose.

(12) Paragraph 12 states that the trustees shall consist of the president, vice-president, secretary and treasurer and one member at large from the board of directors of the taxpayer. It provides that upon each new election and/or appointment of a member or members of the executive committee, subsequent to the date of the trust agreement, a certificate thereof shall be furnished by the secretary or treasurer to the trustees.

(13) In the event of resignation of any trustee, a new trustee or trustees may be appointed by the taxpayer by resolution of its board of directors. The taxpayer has the right at any time by resolution or order of its board of directors for any cause or reason which to it shall seem proper to designate and appoint a new trustee. (Par. 13.)

(14) Paragraph 14 provides that the taxpayer has the right to inspect the books of the trustees and compel an accounting.

(15) Paragraph 15 provides that the cemetery association "reserves to itself the right to amend or modify this Agreement but no modification or agreement shall be made which shall limit or destroy the Trust hereby created or permit the payment of the principal of the Trust to the Cemetery Association".

(16) Paragraph 16 provides that no member or creditor of the taxpayer or lot owner shall have any right to the trust assets and these assets are not to be subject to attachment, garnishment, execution or demand on the part of any shareholder or creditor of the taxpayer or lot owner, it being "the intention that the cemetery and space owners as a whole shall be the sole beneficiaries of this Trust, as provided herein".

The business of the taxpayer is for profit and it must be treated as any other business corporation.[2] It seems to rely upon the language of a number of decisions dealing with the question of the taxation of cemetery income paid into what is generally known as "perpetual care trusts", having for their object the perpetual maintenance of the cemetery grounds. These trusts frequently provide that a specific percentage received from the sale of cemetery lots be set aside in an irrevocable trust for the perpetual maintenance of the graves, grounds, etc., and monies so received and set aside have been held non-taxable income. American Cemetery Co. v. United States, D.C., 28 F.2d 918; Inglewood Park Cemetery Ass'n v. Commissioner, 6 B.T.A. 386; Los Angeles Cemetery Ass'n v. Commissioner, 2 B.T.A. 495; Troost Ave. Cemetery Co. v. United States, D.C.W.D.Mo., 21 F.2d 194.

The rationale of these decisions turns upon the fact that such monies form an irrevocable trust over which the trustee had no power of control and received no benefits.[3] But the Government urges very strenuously that this line of deci-

---

2. A cemetery association may be operated as a non-profit corporation in which case it is exempt from taxation. (Sec. 101 Int.Rev.Code 1939, 26 U.S.C. § 101; Sec. 501 of the Int.Rev.Code of 1954, 26 U.S.C. § 501.)

3. In point of fact, in many of these cases these funds were required to be set aside for perpetual care, etc., by state statute. A typical expression of the reasoning of the Courts may be found in the American Cemetery case, supra, at page 919 of the reports where the Court stated:

"If, on the other hand, a trust is created, and a taxpayer is bound, either by statute or its agreement, to pay certain sums into a trust fund, and if such trust fund is entirely beyond its control, and if the principal income from such trust cannot inure to the benefit of the plaintiff, then the sums paid into the trust are not considered a part of plaintiff's income."

sions cannot be relied upon under the facts here. While conceding some analogy between the two because of certain language in the American Cemetery case,[4] it points out that the intent and purpose of Section 22 of the Internal Revenue Code would be partially nullified if its reasoning were adopted under such facts as these.

In the interpretation of the trust here under consideration, there are two important facts to bear in mind. First, is it apparent from the language of the instrument itself that the taxpayer either (a) retains some substantial measure of control over the trust or (b) receives a benefit from it? Secondly, what are the benefits which might possibly be derived by the taxpayer as opposed to those which the literal language of the instrument would seem to bestow?

For example, the preamble sets forth a need for suitable buildings to be erected " * * * for the use of *lot owners, and their families* as a chapel, administrative building and for such other purposes as are consistent with the operation of the cemetery." (My emphasis.) The quoted language refrains from any inference that the erection of such buildings would benefit not only the lot owners but also the taxpayer. That they would benefit the taxpayer substantially is inescapable. One of the buildings contemplated is termed an administration building. Such a building must necessarily, or at least could, serve the purposes of the taxpayer by containing offices for its officers, for the keeping of corporation records, rooms for sales personnel, etc. Moreover, nothing in paragraph 7 prohibits the trustees from

erecting a building containing vaults or crypts. After such a building were fully paid for, the proceeds of ninety per cent of the sales of crypts or vaults would pass directly to the taxpayer. Indeed, the concluding language of paragraph 16 states in so many words that the construction of a building or buildings as contemplated by the trust would sooner or later accrue to the taxpayer's benefit.[5]

Not only can a clear benefit to the taxpayer be found from the very language of the instrument but a substantial measure of control by the taxpayer over the trust is inherent in its terms. At the outset, it is apparent that the trustees of the Building Fund Trust are the executive committee of the taxpayer which, moreover, has the sole power to fill vacancies among the trustees. The investments made by the trustees are subject to approval by the taxpayer. The plans, specifications and payments for labor and material for the building or buildings are also subject to taxpayer's approval as is the right to dictate the placing of construction loans or mortgages upon the building.

Altogether, it is very plain that the taxpayer here not only may benefit substantially from the trust but also exercises a large measure of control over it.[6]

While some small comfort may be drawn by the taxpayer from the language of the American Cemetery Association case cited in footnote 3, yet this is not that case. The facts here go far beyond. If, upon the completion of an hotel, its directors created a trust requiring twenty per cent of the proceeds of the rentals from all rooms to be placed in trust for the purchase of land for the

4. "It is true that the existence of this [trust] fund probably enables the plaintiff to sell more lots, and to sell them at a better price; but the profit inuring to plaintiff by reason of such plan is taxable."

5. " * * * it being the intention that the cemetery and space owners as a whole shall be the sole beneficiaries of this Trust * * *."

6. Taxpayer points to a deposition of one

Hagenback, manager of the cemetery, in effect denying that it will benefit from the terms of the trust. Thus, argues taxpayer's counsel, no motion for summary judgment can be granted because there is an issue of fact. In my opinion, where depositions or affidavits attempt to negate the very language of the instrument itself and all necessary inferances therefrom, the depositions must be disregarded.

building of a golf course, tennis courts and swimming pool and providing that all fees exacted from guests for the use of these facilities be paid into the trust but that, upon the final payment for such facilities, they be deeded to the hotel corporation in trust forever, could it be reasonably argued that, although for the use and benefit of hotel guests, the hotel corporation did not also benefit? Yet, stripped of window dressing, the trust here does not differ substantially from that in the hypothetical case mentioned.

Under facts strikingly similar to those at bar, the Fourth Circuit Court of Appeals in National Memorial Park v. Commissioner, 145 F.2d 1008, 1012, held a similar trust fund taxable as income. The Court said in part:

"Even were it admitted that the improvement fund constituted a valid trust, though we think the broad extent of the power of control over this fund vested in the petitioner denies this, there could still be no deduction of the fund from income where (as here) it is shown that the benefit of the fund inured primarily to the petitioner. Cf. American Cemetery Co. v. United States, supra. The improvement program was carried out without regard for, and quite apart from, the improvement fund in the hands of the bank. The fund, which petitioner voluntarily created with the bank without definite obligation to its vendees, served merely as a reimbursing fund to cover petitioner's advances for improvements. In any year petitioner was entitled to receive any amount which was spent for improvements and duly certified. Thus we think, as did the Tax Court, that the primary beneficiary of the fund was the petitioner.

"It is not unimportant that the cases relied on by petitioner involve the interpretation of trust funds providing for perpetual maintenance. Further, the fund in those instances was to remain inviolate, just as was the Perpetual Maintenance fund here. Petitioner seeks to apply those cases sustaining the perpetual maintenance funds to its own improvement fund. In our opinion there is a distinct difference between the two. By the very nature of the maintenance fund, it must remain inviolate."

In my analysis of this trust, I have attempted to refrain from according weight to any debatable factor [7] but have confined myself to language so clearly indicating a retention of power by, or bestowing benefits upon, the trustees as to admit of no doubt. Under all the circumstances, it is a fair conclusion that the funds comprising this trust are taxable as income within the contemplation of Section 22 of the Internal Revenue Code.

The taxpayer's motion for summary judgment is denied; that of the Government granted.

7. For instance, the trustees were authorized to construct a chapel. Though the witness Hagenback denied that the existence of a chapel would benefit the taxpayer by increasing sales of lots, it is fairly obvious that both the taxpayer as well as the lot owner would benefit.