**GREEN LAWN MEMORIAL PARK, INC., Plaintiff,**

v.

Joseph T. McDONALD, Collector of Internal Revenue, Defendant.

**GREEN LAWN MEMORIAL PARK, INC., Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

Civ. A. Nos. 4457, 5133.

United States District Court
M. D. Pennsylvania.
July 10, 1958.

Carlon M. O'Malley, Scranton, Pa., Henry D. O'Connor, Philadelphia, Pa., for plaintiff.

Daniel H. Jenkins, U. S. Atty., Scranton, Pa., Fred J. Neuland, Sp. Asst. to Atty. Gen., for defendants, Joseph T. McDonald and United States.

JOHN W. MURPHY, Chief Judge.

In these two actions, plaintiff, a Pennsylvania cemetery corporation, organized for profit—Act of 1933, 15 Purdon's Pa.Stat.Ann. §§ 2852–1, 2, 209—and having its place of business in this district, seeks to recover money allegedly erroneously and illegally assessed and paid under protest on its income tax liability for its first fiscal year ending September 30, 1947.[1] By stipulation the parties have agreed as to all material facts, that refunds were requested and denied, that both actions are timely. Jurisdiction is based upon 28 U.S.C.A. §§ 1340, 1346(a).

During the year in question plaintiff sold cemetery lots valued at $176,286.96. § 209, supra, requires that the articles of incorporation provide "that a sum equal to at least one-tenth of the gross amount of the funds arising from the sale of lots * * * shall be set apart for * * * perpetual care * * * that such sum shall be invested by the board of directors in * * * legal investments * * * the income * * * therefrom * * * applied * * * to the foregoing purposes." Plaintiff's charter and by-laws so provided. January 28, 1947, plaintiff's board of directors, acknowledging that money should be set aside in a fund for perpetual care, resolved that trustees should be elected annually to control, direct and invest such fund. Two directors and a sister of one of them were elected trustees.

Plaintiff's books and records were kept and its income tax return was made upon the accrual method of accounting. During the year plaintiff did not establish any trust fund, make any payments or contributions thereto, or actually set aside any portion of the gross receipts from the sale of lots for perpetual care.[2]

The original agreements of sale—October 1, 1946—June 30, 1949—recited "Every lot receives Perpetual Care", but did not designate any portion of the sales price or provide for setting aside any fund for that purpose. Some time after September 30, 1949, a new type of agreement recited "Every lot receives Perpetual Care"; the purchaser agreed to pay in addition to the purchase price a sum of $———[3] "which we direct them, as our agents, to deposit into the * * * General Trust Fund". After the purchase price was paid in full and $——— deposited in the General Trust Fund, a deed was to be delivered includ-

1. Tax liability: original return December 15, 1947, $1,721.67; amended return April 14, 1949, an additional $10,375.08; deficiency assessment October 19, 1951, an additional $3,619.46; total $15,716.21. #4457 is for a refund of $3,409.34, the amount paid up to the time the Collector went out of office; #5133 is for the balance paid thereafter, i. e., $10,806.18. See Omaha Public Power Dist. v. O'Malley, D.C.D.Neb.1953, 114 F.Supp. 3, 4, affirmed 8 Cir., 1954, 216 F.2d 764; as to the requirement of payment in full, see Flora v. United States, 78 S.Ct. 1079.

2. A trustees' savings account was not opened until July 17, 1948. The amount deposited therein set aside for perpetual care was as of September 30, 1948, $263; September 30, 1949, $1,686.82; September 30, 1950, $8,133.87; September 30, 1951, $10,178.60; September 30, 1952, $17,288.73.

3. Note absence of specific amount, percentage or base.

ing "the right of participation in the statutory fund set apart for \* \* \* Perpetual Care \* \* \* as provided in \* \* \* (the) charter". April 15, 1950, a collateral agreement with lot owners recited that part of the inducement to their agreeing to purchase lots was an agreement that 10% of the purchase price was to be paid into a General Trust Fund; that such a provision was omitted from all previous agreements by mistake, and that the respective contracts should be corrected accordingly. Thus for the first time a provision was made for setting aside 10% for perpetual care.

It is not clear as to what, if any, entries were made on plaintiff's books and records in that regard. In its original income tax return plaintiff reported " \* \* \* reserve for perpetual care— None". Some time later in an amended return plaintiff reported a reserve for perpetual care of $26,443.05, representing 15% of the price of lots sold. After an examination of plaintiff's books, records and return by a Revenue Agent, plaintiff's claimed deduction for perpetual care was disallowed in its entirety and a deficiency tax added.[4] Plaintiff thereafter adjusted its claim of error to failure to allow a deduction of $17,628.-70 from gross income, i. e., 10% of sales of lots for the year in question. Failing therein, the present actions followed.

Pointing to the statutory requirement, the charter and by-laws, the resolution of the board of directors and the election of trustees; to the fact that the books were kept on an accrual basis; the agreements of sales; to whatever representations may have been made, plaintiff claims that the government's determination of its net income did not truly reflect such income as required by §§ 41, 43 of the Internal Revenue Code, 26 U.S.C.A. §§ 41, 43, because each dollar included in sales should have had set aside therefrom 10% for perpetual care; that such sum would never inure to the benefit of plaintiff's stockholders.

The government contends plaintiff was not entitled to exclude or deduct from gross income 10% of the sales price of lots sold during the year as an amount payable to a trust fund for perpetual care of such lots, where no trust fund was actually established or any payments or contributions made to a trust fund setting aside any portion of its gross receipts for the purpose of maintenance and perpetual care of lots sold during that year.

The essential point is one of income not of deduction. The basic principles are however the same.

The power to tax income is plain. See Eisner v. Macomber, 1920, 252 U.S. 189, at pages 205–207, 40 S.Ct. 189, at pages 192–193, 64 L.Ed. 521, 9 A.L.R. 1570; New Colonial Ice Co., Inc., v. Helvering, 1934, 292 U.S. 435, at page 440, 54 S.Ct. 788, at page 790, 78 L.Ed. 1348. Congress has power to condition, limit or deny deductions from gross income in order to arrive at the net that it chooses to tax. Helvering v. Independent Life Ins. Co., 1934, 292 U.S. 371, at page 381, 54 S.Ct. 758, at page 760, 78 L.Ed. 1311. Whether and to what extent deductions shall be allowed depends upon legislative grace and only if there is clear provision therefor can any particular deduction be allowed. New Colonial Ice Co., Inc., v. Helvering, supra, 292 U.S. at page 440, 54 S.Ct. at page 790; Mellott v. United States, 3 Cir., 257 F.2d 798. One of the basic aspects of the federal income tax is that there be an annual accounting of income. Each item of income must be reported in the year in which is is properly reportable and in no other. Healy v. Commissioner of Internal Revenue, 1953, 345 U.S. 278, at page 281, 73 S.Ct. 671, at page 673, 97 L.Ed. 1007; Heiner v. Mellon, 1938, 304 U.S. 271, at page 275, 58 S.Ct. 926, at page 928, 82 L.Ed. 1337; Burnet v. Sanford & Brooks Co., 1931, 282 U.S. 359, at page 365, 51 S.Ct. 150,

---

4. A deduction as to 1947 for carry back operating losses in 1948 and 1949 was also disallowed.

at page 152, 75 L.Ed. 383.[5] The burden rests upon the taxpayer to show he was entitled to the deduction claimed. Brown v. Helvering, 1934, 291 U.S. 193, 199, 54 S.Ct. 356, 78 L.Ed. 725; Reinecke v. Spalding, 1930, 280 U.S. 227, at pages 232–233, 50 S.Ct. 96, at pages 97–98, 74 L.Ed. 385; Wayne Title & Trust Co. v. Commissioner, 3 Cir., 1952, 195 F.2d 401, 403.

"The vital question in these cemetery cases is whether payments are impressed with a trust. The money must be impressed with a trust *when received;* it is unimportant that a reserve is set up or that a trust is afterwards created. * * A trust must be created and the taxpayer must be bound * * * to pay certain sums into the trust fund and it must be impossible for the principal or income of the trust fund to inure to the benefit of the taxpayer. Whether the income is impressed with a trust is essentially a question of fact * * * the tendency has been to tax the full income or refuse a deduction to the cemetery company, and only the strongest cases have prevailed against taxability." Vol. 2, Merten's Law of Federal Income Taxation, § 12.71.

See American Cemetery Co. v. United States, D.C.D.Kan.1928, 28 F.2d 918, 919, "The rule is this: The moneys derived from the sale of cemetery lots shall be treated as income, and no part of that income may be deducted, for taxation purposes, simply because the cemetery corporation has made a general agreement for perpetual maintenance.

"In such a case, the corporation is allowed, as an expense of operation, simply such sums as it may have actually expended for maintenance. If, on the other hand, a trust is created, and a taxpayer is bound, * * * to pay certain sums into a trust fund, and if such trust fund is entirely beyond its control, and if the principal and income from such trust cannot inure to the benefit of the plaintiff, then the sums paid into the trust are not considered as a part of the plaintiff's income." [6]

The intention to establish a trust fund or a mere book entry is not enough. National Memorial Park, Inc., v. Commissioner, 4 Cir., 1944, 145 F.2d 1008, 1012; Mason Securities Ass'n v. Helvering, 8 Cir., 1939, 102 F.2d 362, at page 364; Memphis Memorial Park v. McCann, D.C.M.D.Tenn.1955, 133 F. Supp. 293, at page 298. A trust must be created, the money received paid into the trust fund, and the books of account should disclose that fact before those amounts may be considered as an accrued liability. Acacia Park Cemetery Ass'n, Inc., v. Commissioner, 7 Cir., 1933, 67 F.2d 700, at page 703, and see Cedar Park Cemetery Ass'n, Inc., v. Commissioner, 7 Cir., 1933, 67 F.2d 699. See and cf. Commissioner v. Cedar Park Cemetery Ass'n, Inc., 7 Cir., 1950, 183 F.2d 553; Memphis Memorial Park v. McCann, supra, 133 F.Supp. at page 297. Even where money received from the sale of lots has been placed in a maintenance fund, it is not properly deductible unless the taxpayer has placed the funds beyond its power to use, disburse or diminish. Portland Cremation Ass'n v. Commissioner, 9 Cir., 1929, 31 F.2d 843, at page 845; National Memorial Park v.

---

5. 26 U.S.C.A. (I.R.C.1939) § 41 provides, "The net income shall be computed upon the basis of the taxpayer's annual accounting period (fiscal year or calender [sic] year, as the case may be) in accordance with the method of accounting regularly employed in keeping the books of such taxpayer; * * *."
    § 43, "The deductions and credits * * shall be taken for the taxable year in which 'paid or accrued' or 'paid or incurred', dependent upon the method of accounting upon the basis of which the net income is computed, unless in order to clearly reflect the income the deductions or credits should be taken as of a different period. * * *"

6. In that case the trust was created and funds actually turned over. As to the manner of handling same as an accounting item, see Id. Troost Ave. Cemetery Co. v. United States, D.C.W.D.Mo.1927, 21 F.2d 194. As to the distinction between accounting methods for business and tax purposes, see Guardian Investment Corp. v. Phinney, 5 Cir., 1958, 253 F.2d 326, 329, 330.

Commissioner, supra, 145 F.2d at pages 1012, 1013, 1014; Mason Securities Ass'n v. Helvering, supra, 102 F.2d at page 364; see and cf. Wayne Title & Trust Co. v. Commissioner, supra, 195 F.2d at page 403; Gracelawn Memorial Park, Inc., v. United States, D.C.D.Del. 1957, 157 F.Supp. 516. As to the distinction between a trust and a duty to create a trust, see Memphis Memorial Park v. McCann, supra, 133 F.Supp. at page 298; Restatement, Law of Trusts, § 26, comment d and m; Healy v. Commissioner, supra, 345 U.S. at pages 282, 283, 73 S.Ct. at page 674. As to the statutory duty and the agreements of sale, see Memphis Memorial Park v. McCann, supra, 133 F.Supp. at pages 298, 299.

Here no sums were set aside during the year for perpetual care or turned over to the designated trustees; all receipts from the sale of cemetery lots were used by plaintiff for its general corporate purposes and at no time were placed in trust beyond plaintiff's unrestricted right of use. It was not until July 1948 that a savings account was opened in the name of the three trustees, at which time only $263 was deposited. Additional deposits of nominal amounts were thereafter made in said account, so that even as late as September 30, 1952, the total balance of the trustees' account was less than actually claimed by plaintiff as exclusions or deductions for the taxable year 1947.

In Twin Hills Memorial Park and Mausoleum Corpn. v. Commissioner, etc., Tax Court Docket # 45327; T.C.Memo 1076; C.C.H. 13; P–H Memo 54312, a portion of the contract price was impressed with a trust for perpetual care. During the fiscal-tax-year, in addition to the Pennsylvania statutory and charter provision, an irrevocable trust was authorized; a declaration of trust executed; a trust fund actually created; funds currently set aside therein, separate and apart from any direction or control by the taxpayer. A specific percentage was stated and a promise made in the contracts of sale. The deeds contained a covenant as to perpetual care. The books reflected the liability; a reserve account was created.

Unlike Community Mausoleum Corp. v. Commissioner, 33 B.T.A. 19, here there was no contract, promise or agreement to set aside any specific sum. The mistake was not corrected until 1950. Apart from the requirement that a trust must be created, there was here no contract obligation during the year in question.

Based upon the foregoing, plaintiff corporation did not meet the burden of proving that it was entitled to the deduction claimed. In view of the stipulation as to the material facts, such stipulation is incorporated herein by reference as findings of fact. Our conclusions of law are stated seriatim throughout the opinion. See United States v. Certain Parcels of Land, etc., 3 Cir., 1954, 215 F.2d 140, at page 145.

Judgment will be entered for the defendant.