HAWAIIAN CEMETERY ASSOCIATION, LIMITED, D.B.A. SUNSET MEMORIAL PARK, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

HAWAII PROPERTIES, LIMITED, D.B.A. KANEOHE BAYVIEW MEMORIAL PARK CEMETERY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 77220, 77221.   Filed September 22, 1960.

*John F. Alexander, Esq.*, for the petitioners.
*George E. Constable, Esq.*, for the respondent.

### OPINION.

KERN, *Judge:* These proceedings were consolidated for hearing and opinion.   The respondent determined income tax deficiencies against the petitioners herein, respectively, in the amounts and for the calendar years, as follows:

| Year | Docket No. 77220 | Docket No. 77221 | Year | Docket No. 77220 | Docket No. 77221 |
|---|---|---|---|---|---|
| 1954 | $11,500.81 | | 1956 | $3,074.83 | None |
| 1955 | 4,094.42 | $11,781.54 | | | |

In Docket No. 77221 the year 1955 involves a net operating loss carryback from the year 1956.

In each proceeding the petitioner has conceded all adjustments set forth in the statutory deficiency notice except the one adjustment in controversy herein, namely, the respondent's inclusion of additional amounts in income which are explained as "Unallowable deductions and additional income: (a) Credits to perpetual care fund," as follows:

| Year | Docket No. 77220 | Docket No. 77221 | Year | Docket No. 77220 | Docket No. 77221 |
|------|------------------|------------------|------|------------------|------------------|
| 1954 | $27,110.00 | | 1956 | $17,167.50 | $2,962.50 |
| 1955 | 20,617.50 | $32,740.00 | | | |

In each proceeding the sole issue is whether endowment care fund payments received from purchasers of burial lots and mausoleum space, under agreements which provided for specified amounts for purchase price and endowment care, constituted taxable income when received by each petitioner, respectively, as determined by respondent.

These proceedings were submitted on the pleadings and the separate stipulation of facts filed in each case.

The parties have stipulated the facts. We find them to be as stipulated and incorporate herein by this reference the stipulations and exhibits attached thereto.

In Docket No. 77220 the petitioner, Hawaiian Cemetery Association, Limited, d.b.a. Sunset Memorial Park (hereinafter referred to as Hawaiian Cemetery), is a cemetery corporation organized for profit under the laws of the Territory of Hawaii, with its principal place of business in Honolulu, Hawaii. Its books of account are maintained and its returns filed on an accrual calendar year basis. Its Federal income tax returns for the years 1954, 1955, and 1956 were timely filed with the district director of internal revenue at Honolulu, Territory of Hawaii.

Hawaiian Cemetery had been in an inactive status since 1942 when it was purchased on or about January 1, 1954, by the present stockholders. The latter installed new management and instituted a program to transform the rundown, neglected cemetery into a modern lawn-type cemetery. At all times material herein Hawaiian Cemetery was organized to operate and has operated a memorial burial park and mausoleum known as Sunset Memorial Park, located in the city and county of Honolulu. It sold certain interment and sepulture rights in burial lots and mausoleum space, and it maintained and cared for the cemetery plots, grounds, and buildings. Sales of burial lots were classified into lots for immediate use called "immediate need" sales which were usually made on a cash or short-term credit basis, and lots for future use called "pre-need" sales which were usually made on an installment basis.

During the period from January 1, 1954, through the latter part of 1955 Hawaiian Cemetery sold burial lots and perpetual maintenance under agreements which provided in part, on the face thereof, for "Payments" by the purchaser of itemized amounts shown on a list of separate items embracing the "Endowment Care Fund"; the "Property Price"; the "Total"; the "Down Payment"; the "Bal-

ance"; the "Interest" per annum; and the "Total Balance" due which was payable in specified monthly installments until finally paid. The purchase and sale agreements set forth on the back thereof the "terms and conditions," which provided in part as follows:

No right in or to said property shall pass to purchaser until it is fully paid for and conveyance made as herein provided. The amount of the deposit to be made by purchaser in the Endowment Care Fund * * * for the interment property purchased is shown on the face of this contract. The amount of this deposit is fixed from time to time by the Board of Directors * * *. Seller has no interest in such deposit and agrees to transmit the same to a corporation or trustee designated by the seller as soon as it is paid by purchaser. * * * Upon receiving the purchase price with interest on all deferred payments, together with the deposit in the Endowment Care Fund, seller agrees to cause to be executed and delivered to purchaser a good and sufficient certificate of ownership or deed conveying the interment rights in said cemetery property, and a certificate setting forth the amount of purchaser's deposit in the Endowment Care Fund. * * * This contract is, and the rights to the property covered hereby are and shall be conveyed to and accepted by the purchaser, subject to all the rules and regulations now existing, and/or as the same may hereafter be amended, changed or new rules adopted * * *; such rules and regulations being on file and subject to examination in the office of the seller * * *

During the period from the latter part of 1955 through December 1, 1956, Hawaiian Cemetery sold burial lots and perpetual maintenance under agreements which were modified in some respects as to form and language as compared with the above-mentioned agreements, but nevertheless essentially similar thereto with respect to terms material herein. One difference on the face of the agreement listing the separate items to be paid embraced the item "Endowment Care." Another difference on the back of the agreement was a change in language, namely, "SELLER reserves the right to deposit said endowment care fund to a corporation or trustee designated by the SELLER as soon as total amount owing is paid."

After full payment of the property price and endowment care fund Hawaiian Cemetery, as grantor, executed to the purchaser, as grantee, an indenture which provided in part as follows:

That for and in consideration of the sum of _____ DOLLARS ($_____) to it paid by _____ * * *, the SUNSET MEMORIAL PARK * * * by these presents does grant, bargain, sell, and confirm unto _____ his heirs at common law and assigns, the exclusive and entire right of interment or sepulture in the burial lot * * * together with all ways, rights, liberties, privileges including perpetual care and appurtenances thereunto belonging, or in any wise appertaining:

To HAVE AND To HOLD the same * * *.

And provided also, that the hereby granted premises shall be subject to the rules, conditions, and restrictions made and to be made by the corporators, and managers of the cemetery * * *

In a meeting held on June 7, 1954, Hawaiian Cemetery's board of directors adopted a resolution set forth in the minutes, as follows:

PERPETUAL CARE FUND:

By motion duly carried, it was voted that the President be authorized, to proceed with the establishment of the SUNSET MEMORIAL PARK PERPETUAL CARE FUND, with the following Directors as Trustees. Mr. Gordon Wongham, Mr. Robert C. Ching and Mr. F. Lang Akana.

Hawaiian Cemetery reported on its income tax returns for the taxable years 1954, 1955, and 1956 the amounts received by it from purchasers as the "Property Price" under the above-mentioned agreements.

Hawaiian Cemetery received $27,110 during 1954, $20,617.50 during 1955, and $17,167.50 during 1956 from purchasers as "Endowment Care Fund" or as "Endowment Care" under the above-mentioned agreements. Those amounts were not reported as income on the income tax returns of Hawaiian Cemetery for the years 1954, 1955, and 1956, respectively.

The $27,110 received during 1954, the $20,617.50 received during 1955, and the $17,167.50 received during 1956 from purchasers as described above were commingled with Hawaiian Cemetery's assets, used in the general operation of its business, and not segregated into separate asset funds or accounts, except that during the period October 4 through December 5, 1955, Hawaiian Cemetery purchased in its own name investment certificates of Finance Factors, Ltd., in the amount of $3,150 which were cashed on April 4, 1956. The $3,150 was set up on the books as a charge against the liability "perpetual care fund" reflected on the balance sheet attached to Hawaiian Cemetery's 1955 return. In addition Hawaiian Cemetery purchased in 1956 investment certificates of Finance Factors, Ltd., in the amount of $3,665 which were cashed in August of 1956.

The $27,110 received during 1954, the $20,617.50 received during 1955, and the $17,167.50 received during 1956 from purchasers as described above are reflected in the liability section of Hawaiian Cemetery's 1954, 1955, and 1956 returns, with minor adjustment, as "Perpetual Care Fund" and "Due trustees of Perpetual Care Fund." No notes or other evidence of indebtedness were issued with regard to the $27,110, the $20,617.50, or the $17,167.50.

With regard to the accounts entitled "Perpetual Care Fund" and "Due trustees of Perpetual Care Fund," reflected on its 1954, 1955, and 1956 returns, Hawaiian Cemetery transmitted no funds to a corporation or trustee except that it did acquire the investment certificates of Finance Factors, Ltd., in the amounts of $3,150 and $3,665, described above.

In Docket No. 77221 the petitioner, Hawaii Properties, Limited, d.b.a. Kaneohe Bayview Memorial Park Cemetery (hereinafter referred to as Hawaii Properties), is a cemetery corporation organized for profit under the laws of the Territory of Hawaii on No-

vember 24, 1954, with its principal place of business located in Honolulu, Hawaii. Its books of account are maintained and its returns filed on an accrual calendar year basis. Its Federal income tax returns for the years 1955 and 1956 were timely filed with the district director of internal revenue at Honolulu, Territory of Hawaii.

Hawaii Properties was organized to operate and at all times material herein has operated a memorial burial park and mausoleum known as "Kaneohe Bayview Memorial Park," located in the city and county of Honolulu. It sold certain interment and sepulture rights in burial lots and mausoleum space, and it maintained and cared for the cemetery plots, grounds, and buildings.

During the period from January 1, 1955, to the latter part of 1955, and also during the period from the latter part of 1955 through December 31, 1956, Hawaii Properties sold burial lots and perpetual maintenance under agreements containing provisions similar to those hereinabove set forth with respect to Hawaiian Cemetery. After full payment of the property price and endowment care Hawaii Properties, as grantor, executed to the purchaser, as grantee, an indenture containing provisions similar to those hereinabove set forth with respect to Hawaiian Cemetery.

Hawaii Properties reported on its income tax returns for the taxable years 1955 and 1956 the amounts received by it from purchasers as the "Property Price" under the above-mentioned agreements.

Hawaii Properties received $32,740 during 1955 and $2,962.50 during 1956 from purchasers as "Endowment Care Fund" or as "Endowment Care" under the above-mentioned agreements. Those amounts were not reported as income on its income tax returns for the years 1955 and 1956, respectively.

The $32,740 received during 1955 and the $2,962.50 received during 1956 from purchasers as above described were commingled with Hawaii Properties' assets, used in the general operation of its business, and not segregated into separate asset funds or accounts except that during the period October 4 through December 31, 1955, Hawaii Properties purchased in its own name investment certificates of Finance Factors, Ltd., in the amount of $3,548 which were cashed during the first half of 1956. The $3,548 was set up on the books as a charge against the liability "Due trustees of perpetual care fund" reflected on the balance sheet attached to Hawaii Properties' 1956 return. In addition Hawaii Properties purchased in 1956 investment certificates of Finance Factors, Ltd., in the amount of $2,020 which were cashed in the same year.

The $32,740 received in 1955 is reflected in the liabilities section of the balance sheet attached to Hawaii Properties' 1955 return and

on its books in part among "LONG-TERM LIABILITIES Debenture notes" and in part among "DEFERRED CREDITS Perpetual Care Fund." No notes or other evidence of indebtedness were issued with regard to the $32,740.

The $32,740 received in 1955 and the $2,962.50 received in 1956 are reflected in the liability sections of the 1955 and 1956 balance sheets attached to Hawaii Properties' 1956 return in part among "LONG-TERM LIABILITIES Debenture notes," in part among "LONG-TERM LIABILITIES Due trustees of perpetual care fund," and in part among "OTHER LIABILITIES Perpetual care fund." No notes or other evidence of indebtedness were issued with regard to either the $32,740 or the $2,962.50.

With regard to the account entitled "Perpetual Care Fund" reflected in the liabilities section of the balance sheet attached to Hawaii Properties' 1955 return and with regard to the accounts entitled "Perpetual care fund" and "Due trustees of perpetual care fund" reflected in the liabilities section of the balance sheets attached to its 1956 return, Hawaii Properties transmitted no funds to a corporation or trustee except that it did acquire the investment certificates of Finance Factors, Ltd., in the amounts of $3,548 and $2,020, described above. A trustee was not designated by Hawaii Properties at any time material herein. No trust was authorized by Hawaii Properties' minutes of the stockholders or directors meetings with regard to the $32,740 and $2,962.50 in issue.

In each proceeding it is stipulated that the statutes of the Territory of Hawaii did not require that a trust fund be established by the petitioner under the provisions of the sales agreements involved herein.

The payments received by each petitioner, respectively, for perpetual cemetery care were neither received nor held in trust during the taxable years involved herein.

Petitioners contend that they neither received nor had any right to receive as income to them, respectively, any of the "Endowment Care Fund" or "Endowment Care" payments received during the taxable years from purchasers of burial lots and mausoleum spaces for the perpetual care thereof; that such payments were impressed with a trust at the moment of receipt; that the commingling of such funds with corporate assets and use thereof in the general corporate business are wholly immaterial; and that therefore such payments are not includible in taxable income of petitioners for those years.

Briefly stated and with respect to each petitioner, the respondent contends that under the circumstances pertaining herein the perpetual care funds constituted taxable income upon receipt thereof

for the reasons that the establishment of a trust was not required by contract or by law; that in fact the funds were never transferred to a separate trust or held in trust by petitioners or even segregated into separate asset funds or accounts; and that in fact petitioners never treated the payments as trust funds but commingled them with corporate assets, and used them for general business purposes. We agree with respondent.

Each petitioner sold certain interment or sepulture rights in and perpetual care of burial lots or mausoleum spaces, purchased under agreements which provided for payment of separate amounts for the "Property Price" and for the so-called "Endowment Care Fund" or "Endowment Care" and, if sold on the installment basis, for the total balance due with interest thereon payable to the petitioner. The contract entered into at the time of the purchase provided that the rights covered thereby were subject to all the rules and regulations then existing or thereafter adopted by petitioner. The indenture issued to the purchaser was in consideration of the payment in full of a stated sum and granted interment and sepulture rights, together with certain privileges "including perpetual care," and provided, *inter alia*, "that the hereby granted premises shall be subject to the rules, conditions, and restrictions made and to be made by corporators, and managers of the cemetery."

The record herein is silent as to the petitioners' rules and regulations in effect at any time during the years in question, particularly as to any provision for setting up and maintaining a trust fund for perpetual care, or as to any changes therein. However, during those years petitioners changed the terms of their sales agreements to provide, *inter alia*, merely that "SELLER *reserves* the right to deposit said endowment care fund to a corporation or trustee designated by the SELLER as soon as total amount owing is paid." (Emphasis supplied.) In fact at no time material herein were any of the endowment care payments transmitted to a trustee or in any manner segregated into separate asset funds or accounts held in trust by petitioners. On the contrary, the petitioners in fact at all times material herein treated the endowment care payments as entirely subject to their own dominion and control, and actually used them in general business operations.

It is stipulated that the statutes of the Territory of Hawaii did not require that a trust fund be established by petitioners under the provisions of the agreements involved herein, and in our opinion neither did the agreements themselves. We think it is clear that petitioners sold interment rights *and* perpetual care; that petitioners received a stated consideration for the interment rights and also a stated consideration for the perpetual care, which was to be sub-

sequently furnished by petitioners in a manner determined by them; and that the perpetual care payments constituted gross income to petitioners just as did the purchase price payments, especially where petitioners themselves have treated the perpetual care payments as subject to their own dominion, control, and use.

The facts in the instant cases establish to our satisfaction that the perpetual care payments were not impressed with a trust either by contract or by law at the time of receipt thereof, or that such payments were at any time material herein set apart and held in trust by petitioners. Accordingly, we hold that such payments may not be excluded from income. *Parkview Memorial Association*, 34 B.T.A. 406; *Acacia Park Cemetery Ass'n* v. *Commissioner*, 67 F. 2d 700, affirming 27 B.T.A. 233; *Mason Securities Association*, 36 B.T.A. 958, and cases cited therein, affd. 102 F. 2d 362; and *Green Lawn Memorial Park, Inc.* v. *McDonald*, 164 F. Supp. 438, affirmed per curiam 262 F. 2d 588. Cf. *Gracelawn Memorial Park* v. *United States*, 260 F. 2d 328; *National Memorial Park* v. *Commissioner*, 145 F. 2d 1008, affirming a Memorandum Opinion of this Court dated June 29, 1943; and *Metairie Cemetery Association* v. *United States*, 282 F. 2d 225.

The instant cases are distinguished on their facts from those cemetery cases in which perpetual care fund payments were excluded from gross income upon a showing that the funds were received by the taxpayer more or less as a conduit and placed in an established trust, or definitely impressed with a trust by contract or by law when received and actually set aside in separate asset funds or amounts and held in trust by the taxpayer for the specified purpose, as in *Community Mausoleum Co.*, 33 B.T.A. 19; *Ferncliff Cemetery Mausoleum Co.*, 35 B.T.A. 1037; *Mountain View Cemetery Association*, 35 B.T.A. 893; *Portland Cremation Ass'n* v. *Commissioner*, 31 F. 2d 843, reversing 10 B.T.A. 65; and *Evergreen Cemetery Association of Chicago*, 21 B.T.A. 1194.

The respondent's determination in each of these proceedings is sustained.

*Decisions will be entered for the respondent.*