**METAIRIE CEMETERY ASSOCIATION,**
Appellant,

v.

**UNITED STATES of America,**
Appellee.

No. 18083.

United States Court of Appeals
Fifth Circuit.

Aug. 11, 1960.

Solomon S. Goldman, New Orleans, La., for appellant.

Sharon L. King, Lee A. Jackson, Attys., Dept. of Justice, Washington, D. C., Charles K. Rice, Asst. Atty. Gen., Lloyd Cyril Melancon, Asst. U. S. Atty., M. Hepburn Many, U. S. Atty., Prim B. Smith, Jr., Asst. U. S. Atty., New Orleans, La., for appellee.

Before RIVES, Chief Judge, and CAMERON and WISDOM, Circuit Judges.

WISDOM, Circuit Judge.

This is a taxpayer's action by a cemetery corporation for the refund of income taxes.[1] Metairie Cemetery Association, the taxpayer, provides perpetual care for its burial lots. The purchaser or owner of a burial lot in the cemetery deposits a sum "in trust" with the corporation. The income from the invested deposit is turned over to the corporation to pay the costs of the cemetery's perpetual care of the lot. The taxpayer contends that the income realized from investment of perpetual care funds in tax-free bonds is tax-exempt in the hands of the corporation. We hold to the contrary. The corporation first received the income from the investment of perpetual care funds in its capacity as trustee. When the income was paid to the corporation or taken over by the corporation to meet the charges for perpetual care, the cemetery acted not as trustee but as a private business corporation engaged in a profit-making enterprise. Such payments to the cemetery corporation were compensation for services and were therefore taxable income under Section 22(a) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 22(a).

I.

Since its incorporation in 1872, Metairie Cemetery Association has owned and operated a private cemetery for profit in New Orleans, Louisiana. In addition to selling burial lots, constructing tombs and mausoleums, and providing other cemetery services, the taxpayer furnishes perpetual care for the lots, tombs, and mausoleums in its cemetery. Between May 1, 1949, and April 30, 1952, the taxable period in question, each person who arranged with the taxpayer for perpetual care executed an agreement under which he deposited a specified sum "in trust" with Metairie Cemetery Association. The taxpayer determined the amount of the deposit by estimating the annual cost of the upkeep of the particular grave site and by requiring the lot owner to make a deposit that, when invested, would yield a sufficient amount to cover the cemetery's charges for the upkeep of the grave site.

The taxpayer used two types of perpetual care agreements during the taxable periods involved, but in both the deposit was expressly stated to "be held *in trust* subject to investment" by Metairie Cemetery Association. The parties contemplated that the taxpayer would be entitled to receive the full income from the investment of the deposits in return for its assuming the obligation of perpetually caring for the particular grave sites.

Metairie Cemetery Association deposited the sums received under the perpetual care contracts in a separate bank account, apart from its general corporate funds, and did not include such sums in

1. Timely deficiency assessments were made against the taxpayer as follows:

| Fiscal Year Ended | Tax | Interest | Total Assessment |
|---|---|---|---|
| April 30, 1950 | $ 688.27 | $137.88 | $ 826.15 |
| April 30, 1951 | 2,101.04 | 331.19 | 2,432.23 |
| April 30, 1952 | 1,631.88 | 208.28 | 1,840.16 |

The deficiency assessments were satisfied in full by the taxpayer. Timely claims for refund of such amounts were thereafter filed and the Commissioner of Internal Revenue issued statutory notices of disallowance of the claims on May 25, 1956, and February 25, 1957, respectively. The district court sustained the Commissioner's determination and denied the petition for refund. Judgment was entered June 15, 1959. This Court has jurisdiction of the appeal under 28 U.S.C.A. § 1291.

its reported income.[2] The account was in the name of "Metairie Cemetery Association" and the persons who were authorized to withdraw funds from this separate account were the same persons authorized to withdraw funds from the general corporate account. These funds were invested in securities issued in the name of "Metairie Cemetery Association", except in the case of bearer bonds. All such securities were kept in a bank box separate from other securities owned by taxpayer. All investments and reinvestments of perpetual care funds were made under the direction of the Board of Directors or by a committee of the Metairie Cemetery Association. Among the investments held during the tax years in litigation were a substantial number of tax-free bonds.[3] The income from these tax-free bonds was deposited in the taxpayer's general checking account and commingled with other corporate funds without any restriction as to its use. For the tax years ending April 30, 1950, 1951, and 1952, the taxpayer received the income from all securities representing the investment of the perpetual care funds, and treated the interest from the tax-free bonds as exempt from income taxes.[4]

## II.

The taxpayer contends that no perpetual trust (except for charitable purposes) may be created under the law of Louisiana, and that no trust was created here.

A. Because of Louisiana's civil law heritage and the historic incompatibility of the civil law with the Anglo-American trust, trusts have not had easy going in Louisiana. Louisiana has always permitted "legacies to pious uses" and donations to municipalities and charitable organizations, but before 1882 no trust, charitable or private, could be created.[5] In 1882 the Louisiana legislature authorized charitable trusts.[6] It was not until 1920, however, that the legislature authorized private trusts. The duration of

---

2. Between 1949 and 1952 the following amounts were received under the perpetual care agreements:

| Fiscal Year Ended | Amount |
| --- | --- |
| April 30, 1950 | $39,725 |
| April 30, 1951 | 47,608 |
| April 30, 1952 | 66,853 |

---

3. Under Section 22(b) (4) of the Internal Revenue Code of 1939, as amended, now Section 103 of the Internal Revenue Code of 1954, 26 U.S.C.A. § 103, the owner of bonds or obligations of states, territories or political subdivisions thereof is not required to pay a tax on the interest income realized from such securities.

4. The interest income from the tax-free bonds, as well as the total income from all securities purchased with perpetual care funds, during such years was as follows:

| Fiscal Year Ended | Total Income From Securities | Income From Tax-free Bonds |
| --- | --- | --- |
| April 30, 1950 | $21,042.21 | $10,610.18 |
| April 30, 1951 | 24,942.45 | 13,452.38 |
| April 30, 1952 | 26,837.95 | 14,922.30 |

---

5. See Wheeler, Louisiana Law of Charities, 15 Tul.L.Rev. 177 (1941).

6. The Louisiana Revised Statutes of 1950, combine Act 124 of 1882 with Act 72 of 1918, Act 167 of 1920, and Act 224 of 1946, as Chapter 2, Trust Estates Law, LSA–R.S. 9:2271–2295. A charitable trust "shall continue forever as long as there is a competent person or institution to administer it." LSA–R.S. 9:2291.

private trusts, as distinguished from charitable trusts, was drastically limited in the first Louisiana trust act and is still limited.[7]

■ We find it unnecessary to become enmeshed in the interesting problem of categorizing a cemetery perpetual care fund as a private trust or a charitable trust or an honorary trust.[8] Louisiana, like many states, cut the Gordian knot by enacting special legislation authorizing trusts for the perpetual upkeep of cemetery lots.[9] Section 1 of Act 190 of 1908, now LSA–R.S. 8:2, provides:

"Be it enacted by the General Assembly of the State of Louisiana, That any burial lot or tomb in any cemetery controlled by any company or association incorporated for cemetery purposes under any general or special law of the State of Louisiana, may, by the owner or owners, be conveyed or devised back to and held by such company or association in perpetual trust for the purpose of its preservation as a place of burial * * *. In all cases where in addition to the cemetery corporation there is a special corporation or board of trustees created for the purpose of taking and preserving an improvement fund or funds for the respective cemetery, then and in such cases such conveyance in trust of burial lots or tombs to be held in perpetuity may be made to and held by such special corporation or board of trustees, upon the same trusts, provisions and conditions as are above provided in case of conveyances to cemetery companies . . . ."

B. The taxpayer's position in this case is inconsistent with the terms of the

---

7. Act 107 of 1920, repealed 1935, limited trusts to ten years from the date of the settlor's death except when the beneficiary is a minor in which event the period runs from the beneficiary's majority. This was a constitutional limitation that was carried over in the trust law enacted in 1938. Act 81 of 1938, now LSA–R.S. 9:1791–2212. In 1952, with the benefit of a constitutional amendment, LSA–R.S. 9:1794 was amended to permit private trusts for the lifetime of the beneficiary.

8. At common law perpetual trusts for the upkeep of private cemeteries were generally held invalid. 4 Scott, The Law of Trusts § 374.9; 2A Bogert, Trusts and Trustees § 377. They were not considered as charitable trusts and as private trusts they lacked living beneficiaries who could be financially benefited or who could enforce the trust. The Restatement of Trusts (2d) § 374(h) takes the position that absent an authorizing statute a "provision for the erection or maintenance of a tomb which does not create a charitable trust does not create a private trust, since there is no beneficiary who can enforce it." 2 Scott, The Law of Trusts, § 112.3 (person who has died as beneficiary) ; 4 Scott, § 374.9; 1A Bogert, Trusts and Trustees § 164; 2A Bogert, § 377; Annotation 47 A.L.R.2d § 22. Some authorities upheld trusts for the maintenance of public cemeteries as charitable trusts. Annotation, 47 A.L.R. 2d § 2; see 2 Scott, The Law of Trusts § 124.2, 4 Scott, § 374.9. But a trust for the upkeep of a single burial plot in a private cemetery was usually regarded as noncharitable and void if of an indefinite duration because it created a "perpetuity". Annotation, 47 A.L.R.2d § 3; 2 Scott, The Law of Trusts § 124.2; 1A Bogert, Trusts and Trustees § 164. As a result, many states have enacted legislation providing that dispositions of property for the perpetual maintenance of graves, tombs and monuments are permitted. Restatement of Trusts 2d § 374 (h). Whether these statutes declare such a trust charitable or not, or such an arrangement is a trust, the prevailing view is that there is social advantage in showing respect for the dead, in providing for the sanitary disposal of their remains, in caring for their final resting places, and in maintaining cemetery grounds in orderly condition. 2 A Bogert, Trusts and Trustees § 377; Annotation, 47 A.L.R.2d § 10. Such a "statutory" trust is undoubtedly valid and enforceable. 2 A Bogert, Trusts and Trustees § 377; 4 Scott, The Law of Trusts § 374.9; Annotation, 47 A.L.R.2d § 12.

9. For a discussion and comprehensive listing of these state statutes see 2A Bogert, Trusts and Trustees § 377 notes 41 and 44; 2 Scott, The Law of Trusts § 124.2 notes 5 and 15; 4 Scott, The Law of Trusts, § 374.9; Annotation, 47 A.L.R. 2d § 10.

perpetual care agreements, the taxpayer's practices over the years, and the stipulation filed in this case. For seventy years, or more, the cemetery treated the perpetual care funds as trusts.

It was stipulated in this case that: "The circumstances of the creation of Metairie Cemetery Association, the statutory law governing it and the operation of said corporation for the years dealt with in Metairie Cemetery Association v. Commissioner, 1926, 4 B.T.A. 903, are correctly set forth in the findings of fact in such decision and are adopted as though stipulated herein." In Metairie Cemetery Association v. Commissioner, the same taxpayer contended that the perpetual care funds were held in trust, even as to funds held under certain contracts which omitted a reference to holding the funds in trust. The Board of Tax Appeals found that in 1891 the resolutions of the cemetery's board of directors required that the perpetual care funds "shall be recognized as Trust Funds". The Board of Tax Appeals found no conflict in the evidence as to the contracts. The Board held:

"The evidence is that at the time the contracts were entered into it was agreed that the money would be held in trust for the specific purposes of the contract. This being true, we are of the opinion that a valid trust was created [even] by parol in those contracts where there was no specific provision to that effect [10] * * *. The funds received by the taxpayer from the lot owners having been received in trust for the specific purpose of caring for and maintaining burial places gave rise to no taxable income to the taxpayer."

After that decision the taxpayer consistently stated in its perpetual care contracts that the deposits are held "in trust". In negotiating agreements the taxpayer furnished prospective customers a brochure stating, in part: "The Metairie Cemetery Association is permitted under Act 190 of 1908 of the Louisiana Legislature to accept places of burial in *trust,* which enables the owners to limit interments and prevent the sale by heirs who may come into possession. This protective fund, established by Metairie Cemetery in 1900, and now in excess of $800,000.00, is carefully invested and safeguarded by its Board of Directors. No part of the principal can be spent— only the income from investments is available for the upkeep of burial places, an assurance of perpetuity and a guarantee of permanence."

Under the Louisiana statute and the perpetual care trust agreements, the persons logically the beneficiaries of the perpetual care trust would seem to be the burial plot owners and their heirs.[11] Even if they are not the beneficiaries in a refined sense, and even if the perpetual care trust does not fit neatly into the traditional concept of a trust, the Louisiana statute legitimizes the agreements and assimilates them to trusts. But in any event, the cemetery itself is not the beneficiary, as the taxpayer alternatively contends. Woodmere Cemetery Association v. Commissioner of Internal Revenue, 1935 P-H BTA Memo. Decisions Para. 35,336; Memphis Memorial Park v. Commissioner of Internal Revenue, Para. 59,147 P-H Memo. T.C. (1959).

### III.

A cemetery association may exclude from income deposits paid to it by

---

10. Similarly, in Portland Cremation Ass'n v. Commissioner, 9 Cir., 1929, 31 F.2d 843, the Court held that perpetual care funds constituted a parol trust.

11. In Woodmere the Court said: "The [perpetual care] fund was clearly a trust fund for the benefit of the purchasers of burial lots. The trust is not defeated because there was not a formal conveyance of the funds to a trustee under a specific trust agreement. The trust resulted from the operation of the statute and the petitioner's contractual obligation to the purchasers of lots. The petitioner held or controlled these funds not in its own right but as trustee for the benefit of the lot owners." Woodmere Cemetery Ass'n v. Commissioner of Internal Revenue, 1935, P-H BTA Memo. Decisions, Para. 35;336.

burial lot owners, if it can show that the deposits are received in trust and that the principal and income therefrom cannot inure to its benefit. American Cemetery Co. v. United States, D.C.Kan.1928, 28 F.2d 918. Mertens summarizes the requirements for impressing the fund with a trust for purposes of this exclusion rule as follows:

"The money must be impressed with a trust *when received;* it is unimportant that a reserve is set up or that a trust is afterwards created. Where a portion of the income is so impressed, it remains impressed with the trust regardless of whether it is improperly commingled with other funds. A trust must be created and the taxpayer must be bound, either by statute or its agreement, to pay certain sums into the trust fund and it must be impossible for the principal or income of the trust fund to inure to the benefit of the taxpayer." 2 Mertens, Federal Income Taxation, Section 12171.

■ Here the taxpayer wants to have its cake and eat it, too. If the deposits had not been received in trust, they would have been taxable income to the taxpayer.[12] In excluding the deposits from its reported income, the cemetery corporation in effect denied ownership and asserted trusteeship of the deposits. The taxpayer cannot now secure statutory exclusions on the ground that it is the funds owner or beneficiary and not the trustee thereof.

Each year the taxpayer filed a fiduciary income tax return reflecting the profit on the sale of securities in the perpetual care fund. The taxpayer is now in the anomalous position of saying that it was "not entitled" to receive profits from the sale of securities belonging to the fund—but it is entitled to profits from interest paid on the securities.

■ The taxpayer took the benefit of the rule excluding deposits from its income, thereby committing itself to the position that the deposits are held in trust. Trust income, no less than trust principal, cannot, by all that is holy in the fiduciary relationship, inure to a trustee's benefit—even when the trustee is a cemetery corporation administering funds in a perpetual care trust. Memphis Memorial Park v. McCann, D.C.N.D. Tenn.1955, 133 F.Supp. 293; Green Lawn Memorial Park, Inc. v. McDonald, D.C. 1958, 164 F.Supp. 438, affirmed 3 Cir., 1959, 262 F.2d 588.

It is immaterial that the interest from tax-free bonds in the perpetual care fund is tax-exempt in the hands of the taxpayer as trustee. The interest could not retain its tax-exempt character on being paid to the taxpayer acting in another capacity or on being subjected to the taxpayer's complete control. Memphis Memorial Park v. Commissioner of Internal Revenue, Para. 59,147 P-H Memo. T. C. (1959); Harden v. Commissioner of Internal Revenue, 1954, 21 T.C. 781. The taxpayer overlooks the difference between the corporation as trustee and the corporation as a private business enterprise. When Metairie Cemetery Association as trustee paid Metairie Cemetery Association the costs charged for caring for the grave sites, it was exactly the same as if a third-person trustee had paid the income to the taxpayer for services rendered in the upkeep of the property. If Metairie Cemetery did not receive the money for services rendered, it had no right to it at all. We hold therefore that this compensation of a cemetery corporation for the performance of per-

---

12. Green Lawn Memorial Park, Inc. v. McDonald, D.C.M.D.Pa.1958, 164 F.Supp. 438, affirmed 3 Cir.; 1959, 262 F.2d 588; Acacia Park Cemetery Association, Inc. v. Commissioner of Internal Revenue, 7 Cir., 1934, 67 F.2d 700; American Cemetery Co. v. United States, D.C.Kan.1928, 28 F.2d 918; Troost Ave. Cemetery Co. v. United States, D.C.W.D.Mo.1927, 21 F. 2d 194. These decisions clearly recognize that a trust fund must actually be established, and the principal and interest from the fund be free and independent of the taxpayer's control, for sums paid into the "trust" not to be considered part of the taxpayer's income.

petual care service for burial lots is taxable income under Section 22(a) of the Internal Revenue Code.

Judgment is affirmed.

CAMERON, Circuit Judge, dissents.