The OAK WOODS CEMETERY ASSO-
CIATION, Plaintiff-Appellant,

v.

UNITED STATES of America,
Defendant-Appellee.

No. 14823.

United States Court of Appeals
Seventh Circuit.

March 5, 1965.

Rehearing Denied May 26, 1965.

Castle, Circuit Judge, dissented.

Walter J. Hartmann, Robert F. Han-
ley, A. Daniel Feldman, of Isham,
Lincoln & Beale, Chicago, Ill., for plain-
tiff-appellant.

Louis F. Oberdorfer, Asst. Atty. Gen.,
Tax Division, Anthony Zell Roisman,
Atty., U. S. Dept. of Justice, Washing-
ton, D. C., Edward V. Hanrahan, U. S.
Atty., Chicago, Ill., Lee A. Jackson,
Harold C. Wilkenfeld, Attys., Dept. of
Justice, Washington, D. C., for defend-
ant-appellee.

Before DUFFY, SCHNACKENBERG
and CASTLE, Circuit Judges.

DUFFY, Circuit Judge.

This suit was brought by The Oak
Woods Cemetery Association seeking a
refund of income taxes assessed for

the years 1952, 1953, 1956, 1957 and 1958. The facts are not in controversy and have been stipulated by the parties.

The Oak Woods Cemetery Association (Oak Woods) is a special chartered Illinois corporation created February 12, 1853, Priv.Laws 1853, p. 550 by an act of the Illinois legislature. The charter authorizes it to acquire land for and to operate a cemetery.

There was an amendment to Oak Woods' charter enacted in 1869 which provided, in paragraph 4 of Section 1 —"The Board of Directors may, from time to time, set apart and invest such portion of the proceeds of sale of lots for the permanent improvement of and keeping up, in good order, the said cemetery, as they may deem expedient; and the sums thus set apart shall never be diverted from such use."

Until 1894, no provision was made by Oak Woods for the perpetual care of lots sold by it. After 1894, Oak Woods did undertake to provide future care of lots, and collected from lot owners in return for that undertaking.

Oak Woods received money for perpetual care of its lots through two kinds of agreements: 1) the lot Sales Agreement would provide that in return for the payment of the price of the lot, Oak Woods would provide perpetual care. Eight different forms of this agreement were used over the years. With the exception of one form (Exhibit H), they did not specify what proportion of the sales price was to be set aside for lot care; 2) with respect to lots which had previously been sold without provision for perpetual care, Oak Woods entered into lot care agreements.

Funds received under Lot Care Agreements and a varying portion of the funds received under the Lot Sale Contracts were set apart by Oak Woods. The funds were not included in Oak Woods' taxable income at the time they were received from the lot owners. However, income from the investments made with these funds was included in taxable income when received, and in the years 1913 through 1936 and 1956 through 1958, Oak Woods deducted from that income the statutory credit for dividends received from other corporations. For the years 1937 through 1955, Oak Woods did not take deductions for such dividends.

Oak Woods contends that the income from the stock of other companies in the perpetual care fund was income of its own and as such, Oak Woods should have been permitted to claim the intercorporate dividend deduction under Section 243(a) of the Internal Revenue Code of 1954, and Section 26(b) (1) of the Internal Revenue Code of 1939.

In brief, Section 243(a) and Section 26(b) (1) permit a deduction of 85% of the amount of dividends which one corporation receives from another. Although Oak Woods received dividends from its investment in other corporations, the Government denied the deduction claiming the investment was made with money set aside for future care of cemetery lots, which the Government claims are trust funds, and hence do not belong to Oak Woods.

The District Court held the perpetual care funds were received and held in trust by the taxpayer as trustee for the benefit of the lot owners, and the taxpayer was neither the owner of the funds nor the beneficiary of the trust, and therefore, taxpayer was not entitled to the dividends received deduction on dividends earned by the fund during the tax years in question.

Prior to March 1, 1937, a single balance sheet reflected all assets and liabilities of Oak Woods, including the perpetual care funds. From March 1, 1937 on, balance sheets reflecting the assets of the perpetual care funds were prepared each year separately from the balance sheets reflecting the general accounts of Oak Woods.

Entries showing perpetual care funds as an asset and a reserve of Oak Woods were made on all corporate federal income tax returns which made provision for showing a corporate balance sheet

for each year through the fiscal year ended February 29, 1936.

The Government argues, in effect, that as Oak Woods filed tax returns which did not include the perpetual care funds as income, it cannot now claim ownership of the funds or the income therefrom. However, we think that the failure to correctly report an item of income cannot estop a taxpayer in a future year from treating the item of income as having been received. Commissioner v. Yates, 7 Cir., 86 F.2d 748; Commissioner v. Dwyer, 2 Cir., 203 F. 2d 522, 524; Ross v. Commissioner, 1 Cir., 169 F.2d 483, 496. We hold Oak Woods is not estopped to make the claims it has made in the case at bar.

The Government further argues such receipts were excluded because "the care funds comprised a trust" and that the Commissioner did not question the validity of the exclusion only because the taxpayer treated the funds as a trust. This argument is not convincing because the Commissioner should have known that for twenty-three years, Oak Woods had taken credit for dividends received. From this fact, it would be a legitimate inference that during that period, at least, taxpayer did not regard the funds as trust funds.

The Commissioner is, of course, not bound by the treatment of income adopted by the taxpayer. However, it seems proper that a taxpayer may review his position under the tax law and be free to correct what he thinks is an erroneous method of reporting.

The argument that the 1869 charter amendment itself shows the care funds were held in trust, in our opinion, has no sound basis. While no particular words are required to establish a trust, the words in the charter amendment do no more than authorize the setting aside of funds. Certainly, no beneficiary is named, and the language used does not "show a desire to pass benefits through the medium of a trust [rather than] some related or similar device." 1 Bogert Trust and Trustees, 1951 Ed. p. 299.

There is no evidence in this case that funds here at issue were set aside pursuant to the charter amendment. It was not until 1894 that Oak Woods made any provision for the perpetual care of lots sold by it. Furthermore, the provision cited refers to improvement of the public areas of the cemetery and not to the lots which had been sold. In People ex rel. Chas. G. Blake Co. v. Oak Woods Cemetery Association, 17 Ill.2d 64, 160 N.E.2d 759, while conceding "the power to improve" the cemetery generally, the Illinois Supreme Court denied Oak Woods power "to make improvements of that kind within the cemetery lots that belonged to others."

We think the charter provision is neither a statutory creation of a trust nor a statutory requirement that a trust be created. Also, it is clear that much of the money involved here comes from lot care contracts made at a much later date, rather than from the sale of lots, and this situation is not covered by the charter provision.

The Government also argues that the Illinois Cemetery Care Act declares these funds to be trust funds. The Care Act, Ill.Rev.Stat.1963, c. 21, § 64.1 et seq. does make such a declaration, but the Illinois Supreme Court has held that the Care Act does not apply to special charter cemeteries such as Oak Woods. Rosehill Cemetery Co. v. Leuder, 406 Ill. 458, 94 N.E.2d 342.

Another pertinent point is that Oak Woods' obligation to provide care is not limited to whatever care can be purchased with the income from the funds, and the corollary fact that providing income to fund this operation is the concern of Oak Woods and not the concern of the lot owners.

It is fundamental that the existence of an express trust depends on what the parties said, 1 Bogert, Supra, § 46. The District Court recognized that none of the eight perpetual care agreements

clearly created a trust. The language of the District Court was "admittedly, none of the eight perpetual care agreements used by Oak Woods contained language clearly indicating the creation of a trust."

The Government's contention that Oak Woods was not the owner of the funds is contrary to language used in some of the agreements. Exhibit H states " * * * Said sums shall be the property of the grantor" (Oak Woods). Exhibit B has language to the same effect. Exhibit E states the annual income of the deposit "shall be the sole property * * *" of Oak Woods.

It is our view that because Oak Woods put these funds apart from the general funds, a trust was not thereby created. It was more a matter of careful corporate financial conduct.

The District Court relied on a decision of this Court,—Commissioner v. Cedar Park Cemetery Association, 7 Cir., 183 F.2d 553. We think that case is not controlling in the instant case. We agree that if a cemetery association actually does divest itself of ownership and control of the Care Fund deposits, it comes under the rule of the Cedar Park Cemetery Association case, and that it cannot claim that it owns the funds for the purposes of Section 243(a). In fact, the cases in which the Cemetery Association has claimed deductions under Section 243(a) and where the funds were in a separate trust, have generally held that deduction under Section 243(a) cannot be had. Metairie Cemetery Association v. United States, 5 Cir., 282 F.2d 225; Monte Vista Burial Park, Inc. v. United States, 6 Cir., 340 F.2d 595 (decided January 27, 1965).

In the case at bar, as no trust existed, and as the estoppel urged by the Government cannot prevail, the judgment of the District Court must be and is reversed, and the case remanded for entry of judgment in favor of the taxpayer.

Reversed and remanded.

CASTLE, Circuit Judge (dissenting).

I find myself unable to agree with the conclusion reached by Judge Duffy. His reliance upon the District Court's statement that none of the perpetual care agreements used by Oak Woods contain language "clearly indicating the creation of a trust" is misplaced. The record discloses that the form of agreement in use from March 1, 1947 (Exhibit C) provides that Oak Woods:

"shall set apart the amount of said principal sum and shall forever hold the same, *in trust*, for investment, for the permanent improvement of and keeping up in good order said cemetery, and the sum so set apart shall never be diverted from such uses.

(a) In connection with the improvement of and keeping up in good order said cemetery, the Association shall cut and water the grass on said lot during the summer season, compost, seed and grade said lot every fifth year, if necessary, keep all graves on said lot level with the surrounding surface; * * *." (emphasis supplied)

And, the form of agreement in use since January 1, 1948 (Exhibit D) provides that Oak Woods:

"shall set apart the amount of said principal sum and shall hold such sum *in trust*, for investment, for the improvement of and the keeping up in good order of said lot and cemetery, as set forth in sub-paragraph (a) hereof, and shall never divert such sum from such uses:

(a) To the extent that the net income of such sum will permit (the income, less necessary expenditures of *administering the trust*, being deemed the net income) the Association shall on

Lot No. * * * Section * * Division * * * cut the grass on said lot during the summer season, compost, seed and grade said lot every fifth year, if necessary, keep all graves on said lot level with the surrounding surface, and may apply such portion of said income as it may deem advisable for the mainte-

nance, improvement and keeping up in good order said Cemetery; * *.

(b) Said sum may be commingled with other funds held by the Association for similar uses and the Association shall not be required to maintain a separate account with respect to said sum." (emphasis supplied)

Since the funds so received in trust under these contracts were commingled by the taxpayer with the funds received under the other forms of agreement, and the dividends received were from investments made of the commingled funds, it is my opinion that the taxpayer failed to discharge its burden of establishing that it was the owner of the dividend income and entitled to the dividends received deduction.