**ROSEHILL CEMETERY COMPANY, as Trustee of the Rosehill Cemetery Endowed Care Trust and of the Rosehill Cemetery Mausoleum Endowed Care Trust, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. 67 C 1413.**

United States District Court
N. D. Illinois, E. D.

Feb. 14, 1968.

Ashcraft, Olson, Beach, Kimball, Alexander & Edmonds, Chicago, Ill., for plaintiff.

Edward V. Hanrahan, U. S. Atty. for Northern District of Illinois, Chicago, Ill., for defendant.

MEMORANDUM OF DECISION

JULIUS J. HOFFMAN, District Judge.

In this case the plaintiff seeks a refund of income taxes assessed against and paid by the plaintiff as trustee of certain trusts in the sum of $12,666.52 for the years 1962, 1963, and 1964.

Rosehill Cemetery Company (hereinafter referred to as "Rosehill") is an Illinois corporation with its principal place of business and principal office at

Chicago, Illinois, in the Northern District of Illinois. It is a profit-making cemetery company which, since its creation in 1859, has been engaged in the operation of a cemetery located at 5800 Ravenswood Avenue, Chicago, Illinois, and is operated by a Board of Managers, and as part of this operation, Rosehill sells burial lots in its cemetery and compartments in its community mausoleum. In, connection with the sale of burial lots and mausoleum compartments, it offers for sale to the lot and compartment owners its services in caring for and maintaining the cemetery and the mausoleum.

Since 1902 it has been compulsory for each lot purchaser and each purchaser of a mausoleum compartment to deposit a sum of money for perpetual care. In connection with these deposits, Rosehill caused to be formed the Rosehill Cemetery Company Endowed Care Fund and the Rosehill Cemetery Company Mausoleum Endowed Care Fund (hereinafter referred to as "the Trusts"). Rosehill is the trustee of both Trusts. The Trusts have been administered by Chicago Title and Trust Company, an Illinois corporation authorized to accept and administer trusts, by virtue of a decree of the Superior Court of Cook County, Illinois, entered November 30, 1915, in Case No. 308793, which provided that Chicago Title and Trust Company should have custody and possession of all money and securities then in such trusts and all monies thereafter paid to Rosehill for perpetual care; that monies paid to Rosehill for perpetual care should be paid over to Chicago Title and Trust Company; that these funds should be invested in securities by Chicago Title and Trust Company, with the requirement that each investment be first approved by the Rosehill Board of Managers; and that Chicago Title and Trust Company should at all times retain possession of such funds and pay the net income each month to Rosehill to be used by it to carry out the purposes for which the Trusts were created. In accordance with the provisions of the decree, the perpetual care deposits from lot and compartment purchasers are each month paid over to Chicago Title and Trust Company, which invests them in marketable securities or real estate investments. Capital gains from the sale of investments in these funds are retained and added to the corpus of each of the funds. The corpus is not distributed but remains at all times in the Trusts. The Trusts are irrevocable and are not operated for profit.

The income from the investments, which includes dividends and interest, is remitted to Rosehill by the Chicago Title and Trust Company. Under the terms of the perpetual care agreements made with lot and compartment owners, Rosehill agrees to use the income received from the Trusts for the perpetual care of the cemetery and the mausoleum and for no other purpose. All funds transmitted to Rosehill by Chicago Title and Trust Company from the Trusts are commingled with other funds of Rosehill in any one of Rosehill's three checking accounts. All of Rosehill's expenses are paid out of the funds deposited in these three checking accounts. In 1962, 1963, and 1964, the total sum of $701,147.89 was transmitted from Chicago Title and Trust Company to Rosehill from the two Trusts. Rosehill used these funds to pay certain direct expenses, an allocated portion of general administrative expenses, and an allocated portion of general maintenance expenses, as well as for depreciation.

For the purposes of the 1962, 1963, and 1964 income tax returns, the Trusts were combined under the heading of "Rosehill Cemetery Endowed Care Trusts." For those years, the plaintiff filed its income tax returns with the District Director of Internal Revenue in Chicago, Illinois, in which the plaintiff reported liability for income tax on net capital gains realized by the plaintiff in the following amounts:

| | |
|------|------------|
| 1962 | $1,203.73 |
| 1963 | $1,950.42 |
| 1964 | $9,512.37 |

The plaintiff duly filed with the District Director its claims for refund of such taxes, along with the payment of interest and penalties as provided by law. The plaintiff has received notice of disallowance of those claims from the District Director and has thereupon filed this suit for recovery of such taxes.

The plaintiff asserts that it is entitled to a refund of the income taxes assessed against and paid by it as trustee of the Trusts because the Trusts are "cemetery companies" within the meaning of Section 501(c) (13) of the Internal Revenue Code of 1954, 26 U.S.C. § 501(c) (13). That section provides that:

> Cemetery companies owned and operated exclusively for the benefit of their members or which are not operated for profit; and any corporation chartered solely for burial purposes as a cemetery corporation and not permitted by its charter to engage in any business not necessarily incident to that purpose, no part of the net earnings of which inures to the benefit of any private shareholder or individual

shall be exempt from taxation on their income. The plaintiff asserts that these Trusts fall within the exemption allowed to "cemetery companies * * * not operated for profit." (See the plaintiff's definition of "the ultimate issue in this case" in its brief, p. 4 and also p. 11.) In support of its claim, the plaintiff maintains, first, that the defendant has itself recognized that a perpetual care fund is a "company" within the meaning of § 501(c) (13), and, second, that these Trusts are clearly not operated for profit in that they merely assure to their beneficiaries—the lot and mausoleum compartment owners—perpetual care and maintenance of the entire cemetery and the mausoleum.

The Government takes the position that the Trusts are not cemetery companies exempt from taxation under § 501(c) (13). It denies the plaintiff's assertion that the Government has recognized in its own rulings that a perpetual care trust is a company. It argues, further, that the fact that a perpetual care fund related to a profit-making cemetery company is itself operated not for profit does not make it a cemetery company operated not for profit within the meaning of § 501(c) (13).

I agree with the defendant. First, the Government has not, in the plaintiff's phrase, "recognized in its rulings that a perpetual care trust is a company." In Rev.Rul. 58–190, C.B. 1958–1, 15, the Treasury did state that an organization whose structure resembled that of these Trusts performed a service essential to the maintenance of a cemetery and was considered to be organized and operated for burial purposes within the contemplation of § 501(c) (13). However, that statement was made in the context of a situation involving a nonprofit cemetery association, and it cannot be removed from that context and given a broader reading than was there intended. The holding of that ruling is clearly qualified, viz.: "the instant organization *whose funds are irrevocably dedicated to the perpetual care of a nonprofit cemetery,* as a whole, *none of the net earnings of which inures to the benefit of any private shareholder or individual,* may qualify for exemption from the Federal income tax as an organization described in section 501(c) (13) of the Code." (Emphasis supplied.) The nonprofit character of the cemetery is a substantial part of that holding and may not be ignored. Rev.Rul. 64–217, C.B. 1964–2, 153, specifically addressed itself to a virtually identical situation which had one significant difference: the income from the perpetual care fund in that instance was turned over to a profit-making cemetery company. The Treasury was entirely consistent with its 1958 ruling when it ruled in 1964 that "where the company actually operating the cemetery is itself a profit-making enterprise, the perpetual care fund operated in connection with it would also partake of this character and would not be entitled to exemption from Federal income tax." That ruling acknowledged the earlier (1958) ruling, finding implicit in it a

recognition that perpetual care funds are so closely connected with the actual cemetery companies that they partake of the character of the cemetery companies for exemption purposes. Accordingly, it was held "that the perpetual care fund in the instant case, which is operated in connection with a profit-making cemetery company, is not entitled to exemption from Federal income taxation as an organization described in section 501(c)(13) of the Code."

■ I approve of the logic of the Treasury's position and adhere to it even in the face of a contrary view taken by the United States District Court for the District of Colorado in Denver U. S. National Bank v. United States, 65–2 U.S.T.C. ¶ 9556 (D.Colo.1965). The *Denver* case is distinguishable from the instant case in several important respects. First, the trusts there were operated independently of the cemetery company—a bank, rather than the cemetery company, was the trustee; second, the cemetery company appears to have had no role in the investment of funds, etc.; and again, the court there found that the trust income was used "in its entirety" for the care and maintenance of the cemeteries and the mausoleum (a finding which the evidence in this case does not support). But aside from being distinguishable on its facts, *Denver*, in holding the trusts there to be exempt cemetery companies under § 501(c)(13), failed to recognize and hence to deal with the logic of the Treasury's rulings in this area. The result is the court's unsupportable conclusion that, because the income of the trusts involved was irrevocably committed to providing perpetual care of the cemeteries and the mausoleum, and because providing for perpetual care is a cemetery function, those trusts were perforce "cemetery companies" within the purview of § 501 (c)(13). But merely because a legal entity performs a cemetery function and because it does not itself operate at a profit, it cannot be assumed to be an entity described by Congress as a "cemetery company * * * operated not for profit" and hence exempt from taxation. The most that can be said for this kind of perpetual care fund is that it "provides an essential part of the functions of the cemetery companies themselves." The position of the Treasury in this regard is indicated in Rev.Rul. 58–190, and there, where the fund was an adjunct to a nonprofit cemetery association, it acknowledged the fund's right to claim the tax-exempt status of the cemetery with which it was connected. The Treasury clarified the rationale behind that ruling in its subsequent ruling (Rev.Rul. 64–217), where it succeeded, to this court's satisfaction, in distinguishing the perpetual care fund attached to a profit-making cemetery from the kind of fund discussed in 1958. There is no doctrine which commands this court to ignore the difference between a nonprofit cemetery association, such as a church cemetery created to meet its congregation's desire for a common burial place, and a profit-making cemetery company, whose stockholders have an eye towards higher dividends each year. The perpetual care funds attached to each may appear to be identical, at least in the abstract, but there is ample justification for giving them different treatment under the law.

The numerous cases cited by the plaintiff to the effect that profit-making cemetery companies need not include in their gross income "that portion of the contract sale price of burial lots, or mausoleum crypts, which * * * it is obligated to irrevocably set aside in trust solely for perpetual care and maintenance of the cemetery, burial lots, or mausoleum crypts" are not disputed here by the defendant, nor need they be. The question here is not whether Rosehill must include the funds set aside in the Trusts in its gross income (this question has been long-settled), but whether the Trusts must pay taxes on the earnings realized on the investment of their funds. Similarly, the taxability of the remittances to Rosehill is not at issue here. Moreover, the court cannot infer from the cases cited by the plaintiff that the

Trusts are wholly separate from the cemetery with which they are so closely connected.

■ Nor has the Government argued here that the income from the trust funds should not be used to benefit the cemetery as a whole, rather than for the care of the various lots and compartments. Commissioner of Internal Revenue v. Cedar Park Cemetery Ass'n, 183 F.2d 553 (7th Cir. 1950), recognized that the owners of lots and mausoleum compartments may be justifiably concerned with more than the upkeep of their particular space. But the thrust of the Government's position is that "as the services and facilities furnished by a perpetual care fund to a cemetery operated for profit constitute substantial assistance in its business by affecting the salability and selling price of lots, and relieving the company itself of a legal or contractual obligation, net earnings of such funds inure to the benefit of the profit company or its shareholders." Rev.Rul. 64–217. The evidence adduced at the trial of the instant case supports this position. The record of the trial reveals that the earnings of these Trusts not only went to pay a variety of Rosehill's operating expenses, and thus indirectly inured to the benefit of Rosehill's stockholders, but also were used on at least one occasion, to increase the surplus account of that corporation, thus directly inuring to the stockholders' benefit.

■ When Congress created the exemption now found in § 501(c) (13), it might have specifically included as an exempt organization such perpetual care funds as those created by this plaintiff. (The funds here date from 1902; it cannot be argued that Congress could not have been aware of their existence even when the internal revenue statutes were originally drafted.) But such an exemption was not specifically written into the statute, and exemption provisions should be strictly construed so as not to create tax avoidance where Congress has not specifically provided. Gund's Estate v. Commissioner of Internal Revenue, 113 F.2d 61, 63 (6th Cir. 1940). Where a fund is an adjunct to a nonprofit cemetery association, it is both logical and reasonable to attribute to it the exempt status of that association, but where, as here, such a fund is closely connected with a profit-making enterprise, there is no ground in logic or reason for allowing it an exemption from federal income taxation.

The plaintiff is not entitled to recover any refund of federal income taxes for the years 1962 through 1964 as prayed for in the complaint.

This memorandum of decision incorporates the court's findings of fact and conclusions of law required to be set forth by Rule 52.