EVERGREEN CEMETERY ASSOCIA-
TION OF SEATTLE, a corpora-
tion, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 24805.

United States Court of Appeals,
Ninth Circuit.

July 7, 1971.

Rehearing Denied Aug. 13, 1971.

---

Chambers, Circuit Judge, concurred and filed opinion.

Joseph D. Holmes, Jr. (argued), of Karr, Tuttle, Campbell, Koch & Campbell, Seattle, Wash., for appellant.

William Friedlander (argued), W. Forbes Ramsey, Attys., Tax Div., Johnnie M. Walters, Asst. Atty. Gen., Washington, D. C., Eugene G. Cushing, U. S. Atty., Albert E. Stephan, Asst. U. S. Atty., Seattle, Wash., for appellee.

Before CHAMBERS and HAMLEY, Circuit Judges, and GOODWIN, District Judge.*

ALFRED T. GOODWIN, District Judge:

A cemetery "perpetual care" corporation appeals from a district court judgment denying a refund of capital-gain taxes paid in 1963 and 1964. We affirm.

Two corporate entities are material:

(1) The Evergreen Cemetery Company operates for profit three cemeteries in the Seattle area. It sells cemetery lots, burial crypts, and monuments. It also derives income from opening and closing graves and from the sale of flowers. This company will be referred to as "Sales."

(2) Evergreen Cemetery Association of Seattle, plaintiff, is the successor to the assets of the "Perpetual Care Fund

* The Honorable Alfred T. Goodwin, District Judge for the District of Oregon, sitting by designation.

of the Evergreen Cemetery Co. of Seattle." The fund was established by Evergreen Cemetery Company in 1940. A trust agreement vested the fund in individual trustees. Since 1946, the fund has been managed by plaintiff, a nonprofit, nonstock corporation, organized to comply with local statutes governing perpetual-care funds for cemeteries. This company will be referred to as "Care."

Sales deposits with Care a portion of the sale price of each grave, niche, or crypt sold. Care, in turn, remits annually to Sales all its net income from investments. Sales uses the income to maintain the cemetery. Maintenance costs to date have exceeded the income from Care's investments. Sales pays the excess of such costs over investment income as a current expense of operating the cemetery. When all lots in a cemetery have been sold and occupied, the corpus of the trust in Care's possession presumably will have grown so that the investment income will be sufficient to defray all maintenance costs.

The fund is managed by a board of trustees, but Care, as a corporation, has regular meetings at which each living owner of a cemetery lot, niche, or crypt is entitled to vote. Sales has no control over the investment of the fund. Care has no control over the sale or management of the cemetery property.

Care argues that it is not subject to taxation, because it comes within the exemption granted by Internal Revenue Code of 1954, § 501(c) (13):

> "Cemetery companies owned and operated exclusively for the benefit of their members or which are not operated for profit; and any corporation chartered solely for burial purposes as a cemetery corporation and not permitted by its charter to engage in any business not necessarily incident to that purpose, no part of the net earnings of which inures to the benefit of any private shareholder or individual."

Care contends that it qualifies under the clause: "or which are not operated for profit."

The government argues alternatively:

(1) Care is in essence an operating arm of the profit-making company, and thus cannot be deemed a nonprofit organization under Section 501(c) (13).

(2) If Care is a separate entity from Sales, and does not partake of Sales' profit-making character, then Care must be denied exemption under Section 501 (c) (13), because it is not, standing alone, a "cemetery company."

The government's single-entity argument is not convincing. The separate nature of Care's corporate existence was carefully established and maintained.

In view of the legislative history of Section 501 and Congressional desire to exempt from taxation income used to maintain cemeteries, Care should be entitled to the exemption if it is a "cemetery company." See Metairie Cemetery Association v. United States, 282 F.2d 225 (5th Cir. 1960); Monte Vista Burial Park, Inc. v. United States, 340 F.2d 595 (6th Cir. 1965).

Care is not, however, at this time a "cemetery company." Care handles investments. The proceeds of Care's investments pay for the care and maintenance of cemetery property operated by others. Care performs no cemetery services except the remitting of money to the company that performs all services.

In construing the statutory phrase "cemetery company," the ordinary meaning of the words controls, and Care cannot at this time be said to come within any general definition of "cemetery company." Mercantile Bank and Trust Company v. United States, 441 F.2d 364 (8th Cir., 1971). To call an investment company a "cemetery company" would be similar to calling a mortgage banker a home-builder. For the purposes of exemption from taxation, the character of an organization is determined more by what it does than by what it calls itself.

Revenue Ruling 58-190 does not compel the conclusion that a corporation servicing a perpetual-care fund is a cem-

etery company. That ruling merely states that where an endowment care fund and an operating company seek to be treated as a single entity for tax purposes, tax-exempt status is proper as long as the fund company and the operating company are both nonprofit organizations. Revenue Ruling 64–217 reaches a contrary result where the operating company is a profit-making organization.

In this case, Care has succeeded in dissociating itself from the profit-making purposes of Sales; but it has also given up the right to claim the operational character of Sales as a "cemetery company."

■ Standing alone, Care is not entitled to tax-exempt status, because it is not a cemetery company. Rosehill Cemetery Company v. United States, 285 F.Supp. 21 (N.D.Ill.1968); Mercantile Bank and Trust Co. v. United States, supra. We express no opinion with respect to the status of a perpetual-care, nonprofit corporation that has actually taken over the profitless management of a "sold-out" cemetery property. Such is not the case here for review.

The judgment of the district court is affirmed.

CHAMBERS, Circuit Judge (concurring):

I concur in the result. If the Care company were actually paying currently the total cost of maintenance of sold lots, I would extend Revenue Ruling 58–190 to give Care income tax exemption.

He who buys "perpetual care" necessarily thinks the price he pays covers total care beginning now. When it does not and the sales company makes up the difference between cost of maintenance of sold lots and the income of the perpetual fund, charity becomes too intertwined with promotion. And, so I am not shocked by Care failing to get income tax exemption, which for practical purposes applies only to capital gains.

Of course, I do not mean to suggest that separate lawn mowers should be bought for sold and unsold lots. There could be a proper allocation of total costs.