The **ARLINGTON MEMORIAL PARK ASSOCIATION and the First National Bank in El Dorado, Trustee of the Arlington Memorial Park Perpetual Care Fund, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**Civ. No. ED 69–C–15.**

United States District Court,
W. D. Arkansas,
El Dorado Division.

April 29, 1971.

William H. Bowen and Byron M. Eiseman, Jr., Smith, Williams, Friday & Bowen, Little Rock, Ark., for plaintiffs.

Eugene G. Sayre, Dept. of Justice, Dallas, Tex., Bethel B. Larey, U. S. Atty., Fort Smith, Ark., for defendant.

### MEMORANDUM OPINION

OREN HARRIS, Chief Judge.

This is an action by the plaintiffs for the recovery of federal income taxes and assessed interest in the total amount of $4,781 for the fiscal years ending September 30, 1959, through September 30, 1967. Plaintiffs contend the perpetual care trust fund administered in connection with the operation of the Arlington Realty Company, a business operated for profit, should be exempt from federal taxation as a "cemetery company," pursuant to Section 501(c) (13) of the Internal Revenue Code of 1954. Defendant contends that the perpetual care trust fund is functionally a part of the business operated for profit by Arlington Realty Company, and as such fails to qualify as a tax-exempt "cemetery company." The Court, having considered the stipulation of facts, the pleadings,

and the briefs of both parties, makes the following findings of fact and conclusions of law: .

### Findings of Fact

1. The Arlington Realty Company (hereinafter referred to as Realty) was incorporated as an Arkansas corporation in 1924. Realty's sole business has been the developing and selling for profit of burial spaces in Arlington Memorial Park, a cemetery located in El Dorado, Arkansas. This cemetery contains approximately 40 acres, and, as of the time of trial, Realty has sold more than 80 percent of the usable burial spaces in the memorial park.

2. The Arlington Memorial Park Association, Inc. (hereinafter referred to as Association), is an Arkansas corporation, and is the successor to Arlington Memorial Park Association, an unincorporated association formed in 1924. Association's membership is comprised of the purchasers of lots in the Arlington Memorial Park Cemetery.

3. Association has no employees, and, except for the holding of its annual meeting, is, and has always been a totally inactive organization. The officers and directors of Realty and Association are, and have been throughout the period in suit, one and the same.

4. The First National Bank of El Dorado, Arkansas (hereinafter referred to as Trustee), is an Arkansas banking corporation located in El Dorado, Arkansas.

5. On December 22, 1924, the three above-mentioned parties, Realty, Association and Trustee, entered into an agreement entitled "Articles of Agreement Between Arlington Realty Company, Arlington Memorial Park Association and First National Bank of El Dorado, Arkansas". This 1924 agreement was amended on January 1, 1963. The 1924 agreement, as amended, required Realty to pay over to Trustee fifteen (15) percent of all monies collected by it from the sale of burial spaces in its cemetery, until the fund so collected and held by Trustee reaches the value of $200,000. Trustee was required to hold this money in trust as a perpetual care trust fund, the income therefrom to be used for the purpose of maintaining and caring for Arlington Memorial Park. Both the original agreement and the amendment thereto, state that the interest and earnings derived from the perpetual care fund shall be turned over to Association for the purpose of maintaining the cemetery. Pursuant to the agreement, Association agreed to take charge of, and be responsible for, the perpetual care of the cemetery being developed by Realty.

6. However, in actual practice, the interest and earnings from the perpetual care fund have never been distributed to Association by Trustee. Instead, pursuant to a directive contained in a 1943 resolution of Realty's board of directors and a 1963 resolution of the board of directors of Association, Trustee has accumulated both the ordinary earnings (dividends and interest) and net capital gains (gains on the sale of the trust corpus) of the trust. These amounts have been added to the corpus of the perpetual care trust, along with the required fifteen (15) percent of the amount received by Realty from the sale of lots in the cemetery. Trustee has never made any distributions of income from the perpetual care trust to Association to be used for the care and maintenance of Arlington Memorial Park. All of the costs incurred in maintaining Arlington Memorial Park have always been borne by Realty.

7. Association filed an application with the Internal Revenue Service requesting that it be declared an organization exempt from taxation as a "cemetery company" described in Section 501(c) (13) of the Internal Revenue Code of 1954, which application was denied.

8. Trustee filed income tax returns on behalf of the perpetual care trust fund and paid the tax shown due there-

on for each of the fiscal years in suit. As recited in these returns, the only disbursements from the trust fund for any of the fiscal years in suit were for the payment of Trustee's fee and other minor expenses. Plaintiffs filed timely claims for refund, and following their denial, this action was timely instituted.

## Conclusions of Law

1. Jurisdiction is conveyed upon this Court by 28 U.S.C. § 1346(a) (1) and venue is proper pursuant to 28 U.S.C. § 1402(a) (2).

2. Arlington Memorial Park Association, Inc., is a corporation which has never acted to carry out the purpose for which it was formed. During the period in suit, the Association was dormant, except for the holding of its annual meeting, and it did not oversee the care and maintenance of Arlington Memorial Park. Instead, this function was carried out by the Association's sister corporation, Realty. Notwithstanding its lack of activity, Association claims to be a "cemetery company," as that term is used in Section 501(c) (13) of the Internal Revenue Code of 1954.

3. In Mercantile Bank & Trust Co. v. United States, 441 F.2d 364 (decided April 12, 1971), affirming 312 F.Supp. 1164 (W.D.Mo., 1970), the Eighth Circuit Court of Appeals interpreted the term "cemetery company" as that term is used in Section 501(c) (13). In that case, the income from the perpetual care trust fund had actually been used for maintaining the cemetery. The Eighth Circuit held that:

> * * * Generally a cemetery company owns real estate which for a consideration it makes available for the burial of the dead. It develops the real estate by landscaping and lays out and establishes roads and paths to make the graves accessible. Burial lots are sold. In some instances, mausoleums are built and space therein is sold for burial. Graves are opened for burial and closed, and other miscellaneous services are provided. The grounds and buildings are maintained so as to present a proper appearance. Taxpayers have offered no substantial evidence to meet the burden resting upon them to show that they are a cemetery company. The only services that the taxpayers perform which approach a cemetery operation is to provide trust income to help pay for the cemetery maintenance.
>
> Assuming that providing the funds constitutes maintenance, taxpayers fall far short of being a cemetery company. They perform only a very small portion of the usual functions of a cemetery company. Taxpayers own no cemetery real estate, they sell no burial space and render no services related to burials. Taxpayers have failed to establish that they are a cemetery company within the meaning of the term as used in the applicable statute. Thus they do not qualify for the exemption claimed.

In the instant case, as in *Mercantile Bank*, the plaintiffs neither owned nor developed cemetery real estate, sold no burial spaces, and rendered no service related to burial of the dead. However, unlike the taxpayers in *Mercantile Bank,* the instant taxpayers did not even furnish trust income to provide for the cemetery's maintenance. Under the controlling decision of the Eighth Circuit in *Mercantile Bank,* plaintiffs have failed to establish that they are a "cemetery company" within the meaning of Section 501(c) (13) of the Internal Revenue Code of 1954, and, therefore, fail to qualify for the exemption from taxation provided therein.

4. Since Association has been a completely dormant corporation, save and except for its annual meeting, it is unnecessary for this Court to determine, as set forth in Rev.Rul. 64–217, 1964–2 Cum.Bull. 153, whether or not Association is so functionally related to Realty that it must assume the taxable status of the profit oriented corporation. However, this Court does approve the rationale of the aforementioned revenue ruling which was adopted in Rosehill

Cemetery Co. v. United States, 285 F. Supp. 21 (N.D.Ill., 1968), Evergreen Cemetery Assn. of Seattle v. United States, 302 F.Supp. 720 (W.D.Wash., 1969), and First National Bank of Waco v. United States, 327 F.Supp. 1119 (W. D.Tex., 1970). Contra, Denver United States National Bank v. United States, 302 F.Supp. 801 (Colo., 1965), and Washington Trust Bank v. United States, 301 F.Supp. 713 (E.D.Wash., 1969).

5. The attorney for defendant is directed to prepare a judgment in accordance with this memorandum opinion.