**EVERGREEN CEMETERY ASSOCIATION and the Kentucky Trust Co., Plaintiffs,**

**v.**

**UNITED STATES of America, Defendant.**

**No. 7287–B.**

United States District Court, W. D. Kentucky, Louisville Division.

Feb. 21, 1974.

Winfrey Blackburn, Jr., Louisville, Ky., for plaintiffs.

George J. Long, U. S. Atty., for defendant.

## MEMORANDUM AND ORDER

BRATCHER, District Judge.

This is an action against the United States for the refund of income taxes paid by plaintiff in the sum of $11,780.-89 for the years 1968, 1969 and 1970. The case has been submitted to the Court on an agreed stipulation of facts, interrogatories and briefs. Jurisdiction is based on 28 U.S.C. § 1346(a)(1).

The pertinent stipulated facts as set out by the parties are as follows:

1. The Evergreen Cemetery Company (hereinafter the Company) is a for-profit corporation organized in 1912 under the laws of the State of Kentucky. It has the primary purpose of developing the Evergreen Cemetery in accordance with a contract between the Company and the Evergreen Cemetery Association (hereinafter the Association).

2. In 1913 the Company acquired approximately 240 acres of land in Jefferson County, Kentucky.

3. The Association was organized in 1914 as a not-for-profit corporation under the laws of the State of Kentucky. Its purpose, as stated in its Charter, is to acquire land for cemetery purposes for the sole purpose of burying or otherwise caring for the dead.

4. The Charter of the Association provides for the maintenance of a fund to be used solely for the perpetual care of the cemetery grounds. The income from the principal, after paying all necessary expenses, is to be invested and re-invested, and no part of the principal is to be used for any purpose other than necessary expenses of the Corporation.

5. The Charter provides that the Association shall not be operated for the benefit of any individual.

6. The Association is run by a Board of from three to five Trustees, and the membership is limited to no more than one hundred members, each of which shall own at least one burial lot in the Cemetery.

7. By agreement dated April 14, 1914, the Company agreed to convey to the Association the approximately 240 acres it had acquired in 1913. The agreement provided for the immediate conveyance of thirty acres and the rest at a latter period.

8. The April 14, 1914, agreement gave the exclusive right to the Company to sell lots and embellish and plot the grounds of the Cemetery. Pursuant to this agreement, the Company was to retain ninety (90%) percent of the sale price of each lot, which was to be the full consideration for the conveyance of the land from the Company to the Association and for the services of the Company of surveying, plotting and embellishing the land. The remaining ten (10%) percent of the sale price of each lot was to go to the Association, to be put aside in a Permanent Care Fund.

9. The income from the principal of the Fund is to be invested and re-invested until reaching $500,000.00. After the Fund amounts to $500,000.00, the Board of Trustees may use the income thereon for the maintenance and care of the burial lots sold by the Association, but such income cannot be used for any other purpose. The Company is to pay for the maintenance of the lots until such time as the Fund amounts to $500,000.00.

10. By agreement on May 10, 1929, the Company and the Association changed the amount which the parties would receive from the sale of the lots. The contract provided that after July 1, 1929, the Company was to receive ninety-five (95%) percent of the sale price

of each lot and the Association the remaining five (5%) percent. The contract also provided that the Association was to take over the maintenance of the Cemetery when the Fund reached $300,000.00, as opposed to the $500,000.00 previously called for in the 1914 agreement, at which time the percentage payments from the Company would stop. Further, the agreement provided that the proper officers of the Association who handled the Fund must "execute bond to the Company with surety to be approved by the Company . . . .".

11. A new agreement between the Company and the Association was entered into on July 30, 1954, which provided for the Fund to be delivered to the Kentucky Trust Company, and further that the amount of the sale price of each lot retained by the Company was changed from ninety-five (95%) percent to ninety-two and one-half (92½%) percent.

12. A three-way agreement the Company, Association and the Kentucky Trust Company was entered into on August 3, 1954.

13. The July 30, 1954, contract between the Company and the Association and the August 3, 1954, three-way agreement mentioned above, were in effect during the fiscal years in question —1968, 1969 and 1970.

14. The Kentucky Trust Company, as Trustee for the Permanent Care Fund of the Evergreen Cemetery Association, filed and paid income taxes for each of the tax years in question: 1968— $2,873.22; 1969—$6,634.67 and 1970— $2,273.00.

15. The Association, with its Fund, in January, 1955, requested the Internal Revenue Service for a ruling to establish its exemption from federal income taxation. In both 1960 and 1961 the IRS determined the Association and Fund were not exempt from federal income taxation.

16. In 1971 the Kentucky Trust Company, as Trustee of the Association's Permanent Care Fund, filed a claim for a refund of the taxes paid in 1968, 1969 and 1970. Plaintiff claims that it should be exempt from taxation under Section 501(c)(13) of the Internal Revenue Code of 1954.

17. The plaintiffs were notified that their claim was disallowed.

18. At no time during the years in question or any years prior to 1968 was any money distributed from the Fund for any purpose.

19. The Cemetery land is owned by the Association in fee simple and its president approves all plans for development of the Cemetery.

This request for the refund of taxes paid by plaintiff is based on the exemption allowed in Section 501(c)(13) of the Internal Revenue Code of 1954, 26 U.S.C. The Section provides:

Cemetery companies owned and operated exclusively for the benefit of their members or which are not operated for profit; and any corporation chartered solely for burial purposes as a cemetery corporation and not permitted by its charter to engage in any business not necessarily incident to that purpose, no part of the net earnings of which inures to the benefit of any private shareholder or individual.

Plaintiff contends that it falls into the category of a cemetery company, operated not for profit and therefore should be entitled to the exemption. Plaintiff argues that, of the cases cited by the defendant in support of its contention that the plaintiff is not entitled to the exemption and thus the refund, only two apply to the factual situation presented in this case.

The facts in Rosehill Cemetery Co. v. United States, 285 F.Supp. 21 (N.D.Ill., 1968); Provident National Bank v. United States, 325 F.Supp. 1187 (E.D.Pa., 1971); First National Bank of Waco v. United States, 327 F.Supp. 1119 (W. D.Tex., 1970); Mercantile Bank & Trust Co. v. United States, 312 F.Supp. 1164 (W.D.Mo., 1970); Evergreen Cemetery Association v. United States, 444 F.2d

1232 (9th Cir., 1971); Washington Trust Bank v. United States, 444 F.2d 1235 (9th Cir., 1971) and Denver U. S. National Bank v. United States, 302 F. Supp. 801 (Colo., 1965), can be distinguished from the case at bar. In a majority of the cases cited above the Courts dealt with a for-profit cemetery company which directly set up the permanent care trust fund. The Courts held under such facts that the trust fund was not exempt under Section 501(c)(13) because it was too closely connected to the for-profit company.

Another situation in which the Courts have not allowed an exemption is when the trust fund is too far removed from the corporation in that the fund acts solely as an investment company and does not perform the necessary tasks to be considered a cemetery company.

The plaintiff has correctly construed that Arlington Memorial Park Association v. United States, 327 F.Supp. 344 (W.D.Ark., 1971) and Resthaven Memorial Park & Cemetery Association v. United States, 155 F.Supp. 539 (W.D. Ky., 1957) more closely resemble the facts in the present case than the previously cited cases.

In *Arlington,* supra, the realty company, a for-profit corporation, owned all the real estate, and its sole business was the sale and development of the cemetery lots. The plaintiff was a not-for-profit association which had no employees and was totally inactive. The maintenance of the cemetery was performed by the realty company during the years in question as the money in the perpetual care fund was never distributed to it by the trustees. Further, the directors of the Association were the same as for the realty company. On that set of facts, the Court held that the plaintiff Association was not entitled to an exemption since it was a dormant organization and thus derived its taxable status from the for-profit corporation with which it was connected.

The situation in *Resthaven,* supra, was different in several respects from *Arlington,* supra. The Resthaven Lot Owners Association, a not-for-profit corporation, was organized for the purpose of establishing and maintaining a cemetery. The Association contracted with a group of trustees which would from time to time convey real estate to the Association and which set up a trust fund for the permanent care and maintenance of the grounds. The Association was to operate and maintain the cemetery.

The for-profit Resthaven Cemetery Company was organized to take over for the trustees and was primarily a land development company. The Association, however, amended its Articles of Incorporation to include as its purposes the sale and maintenance of burial vaults, mausoleums, and the performance of all the other burial services expected of a cemetery, including the embellishing and maintenance of the grounds.

The Court held that the Resthaven Association was clearly a cemetery company, not operated for profit, and therefore was entitled to an exemption from federal income taxation.

The facts of the present case fall in between the situations in *Arlington,* supra, and *Resthaven,* supra. The not-for-profit Association here is more active than the completely dormant one in *Arlington,* supra. However, it is not as active as the Association in *Resthaven,* supra.

The Resthaven Association provided all the management functions of the cemetery and provided for the maintenance and embellishment of the grounds. The plaintiff here has only a slight hand in the running of the Cemetery. The for-profit Evergreen Company handles the sales of all the lots, maintains and embellishes the grounds, and funds the Permanent Care Fund. No money has at any time been distributed to the Association from the Fund for the maintenance of the Cemetery.

From a reading of the agreement between the two parties and the Articles of the Association, this Court holds that the plaintiff is not a cemetery company

by itself for the purpose of the exemption in Section 501(c)(13). The Association does not perform enough vital functions for the Cemetery in order to qualify. Mere ownership of the land and approval of the development plans of a profit-oriented company is not enough. The Association does not perform "services essential to the maintenance of the Cemetery" as stated in Revenue Ruling 58–190.

Thus, it is the opinion of the Court that the plaintiff, with its Perpetual Care Fund, does not qualify for the exemption provided for in Section 501(c)(13), and therefore is not entitled to a refund of the taxes paid by it for the years 1968, 1969 and 1970.

Judgment shall be entered accordingly.